UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

IAN CRACE,

    Plaintiff,

vs.

VIKING GROUP, INC.,

    Defendant.

Case No. 3:20-cv-176

District Judge Michael J. Newman

_____

**ORDER: (1) GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL CLASS CERTIFICATION (DOC. 2); (2) DENYING PLAINTIFF'S MOTION TO APPROVE THE PROPOSED CLASS NOTICE (DOC. 2); AND (3) ORDERING THE PARTIES TO CONFER AND SUBMIT A REVISED PROPOSED NOTICE WITHIN FOURTEEN DAYS FROM THE DATE OF THIS ORDER**
_____

    This civil case is before the Court on Plaintiff's motion for conditional class certification and issuance of court-approved notice to potential opt-in plaintiffs. Doc. 2. Defendant has responded (doc. 6) and Plaintiff replied (doc. 7). The motion is now ripe for review. For the following reasons, the Court **GRANTS** Plaintiff's motion insofar as he seeks conditional class certification but **DENIES** Plaintiff's motion for approval of his class notice. Docs. 2, 2-2. The Court **ORDERS** the parties to promptly meet and confer and submit a revised class notice.

**I.**

    Defendant is a franchisee of nineteen Donatos Pizza locations in the Dayton and Springfield, Ohio region. Doc. 1 at PageID 2. Plaintiff was employed by Defendant at two different locations as a pizza delivery driver from 2008 to 2010, and again from 2014 to March 2020. Doc. 2-1 at PageID 44. Plaintiff brings this class action complaint on behalf of delivery drivers employed by Defendant from May 6, 2017 to the present for alleged violations of: the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19; the Ohio Minimum Fair Wage Standards

Act, Ohio Rev. Code §§ 4111.01–.04; Article II, Section 34(a) of the Ohio Constitution; and the Prompt Pay Act, Ohio Rev. Code § 4113.15. Doc. 1 at PageID 1–2. Plaintiff asks the Court to conditionally certify a FLSA class and authorize distribution of an opt-in notice to putative class members. Doc. 2.[1]

The FLSA requires covered employers to pay non-exempt employees a minimum wage of at least $7.25 per hour. *See* 29 U.S.C. §§ 206–07. Employers are permitted to take a "tip credit" against their tip-receiving employees' wages and effectively pay them a subminimum cash wage. *See* 29 U.S.C. § 203(m), (t); 29 C.F.R. § 531.56(e) (2012). Defendant classified Plaintiff as a tipped employee because he received tips from deliveries and, therefore, subtracted a tip credit from his hourly wage. Doc. 1 at PageID 6; Doc. 2-1 at PageID 51. During the relevant time period, Plaintiff received cash wages of $4.08 in 2017; $4.15 in 2018; $4.30 in 2019; and $4.35 in 2020. *Id.*; *see also* doc. 2-1 at PageID 51.

Plaintiff alleges that he and "approximately 40[-]to[-]50" other delivery drivers were required to perform non-tipped work at Defendant's restaurants while earning their tipped wage. Doc. 2-1 at PageID 49. In an affidavit, Plaintiff claims there were times where he spent between "30 and 50 percent" of shifts performing nontipped work -- such as folding pizza boxes, cleaning cooking equipment, and taking customer orders -- for which he received a tipped wage. *Id.* at PageID 46. For example, Plaintiff recalls an instance where he cleaned "more than 300" pizza pans during a shift but was compensated as if he were delivering pizza. *Id.*

Plaintiff explains that his supervisors typically scheduled three-to-five delivery drivers, one-to-two employees to work the counter, and several cooks per shift. *Id.* at PageID 45. Both

---

[1] Plaintiff also alleges that he was fired in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615. Doc. 1 at PageID 15. He does not include the FMLA claim among those brought on behalf of the putative class. *Id.* at PageID 1–2.

front counter workers and cooks received a non-tipped wage. *Id.* at PageID 47. Plaintiff claims delivery drivers were asked to play a utility role: when they were not delivering pizzas, they were assigned non-tipped restaurant tasks. *Id.* at PageID 46–47. Delivery drivers allegedly delivered orders on a "last-in-first-out" basis, meaning each new delivery was made by the driver who had been at the restaurant the longest. *Id.* at PageID 46. Plaintiff believes this policy resulted in delivery drivers performing tipped and non-tipped work in relative proportion. *Id.*

In his affidavit, Plaintiff recalls asking a supervisor if delivery drivers in Defendant's other restaurants spent this much time on non-tipped tasks, to which the supervisor allegedly replied, "Yes . . . it was the policy of the Donatos stores." *Id.* at PageID 45. Plaintiff claims that a different manager told him that it was Defendant's policy to overschedule delivery drivers and assign them non-tipped work "to cut down on labor costs." *Id.* at PageID 46–47.

At times, Plaintiff did receive a non-tipped wage. *Id.* at PageID 49. He explains that, after the restaurant closed or delivery drivers finished their shifts, certain delivery drivers were retained to perform non-tipped work in the restaurant. *Id.* This system required delivery drivers to clock out from their tipped wage and clock back in at a non-tipped rate. *Id.*

## II.

The FLSA provides that a court may certify a collective action brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Class certification under the FLSA is a two-step process. *See Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011). Step one -- conditional certification -- occurs prior to discovery and requires the court to assess whether the putative class is "similarly situated." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). Step two -- final certification -- takes place after all putative plaintiffs have affirmatively opted into the class. *Id.*; *see also Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 167–68 (1989). "District

courts use a 'fairly lenient standard' that 'typically results in conditional certification of a representative class' when determining whether plaintiffs are similarly situated during the first stage of the class certification process." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (quoting *Comer*, 454 F.3d at 547). Defendants may file a motion to decertify the class at the final certification stage. *See Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 213 (S.D. Ohio 2011).

### A. Plaintiff and the Putative Class Are Similarly Situated

"[P]laintiffs are similarly situated when they suffer from a single FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Gunn v. NPC Int'l, Inc.*, 625 Fed. App'x 261, 267 (6th Cir. 2015) (quoting *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016)). "Showing a 'unified policy' of violations is not required. The named plaintiff 'need only show that his position is similar, not identical, to the positions held by the putative class members.'" *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016) (quoting *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867–68 (S.D. Ohio 2011)). In making this determination, courts should consider: "[(1)] whether potential plaintiffs were identified; [(2)] whether affidavits of potential plaintiffs were submitted; [(3)] whether evidence of a widespread . . . plan was submitted"; and (4) whether a manageable class exists. *Id.* (quoting *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 486 (S.D. Ohio 2014)); *see also Lewis*, 789 F. Supp. 2d at 868.

The Sixth Circuit has not yet addressed the evidentiary standard that applies at the conditional certification stage. *See, e.g.*, *Slaughter v. RMLS Hop Ohio, L.L.C.*, No. 2:19-cv-3812, 2020 WL 1929383, at *9 (S.D. Ohio Apr. 21, 2020); *Bailey v. Black Tie Mgmt. Co.*, No. 2:19-cv-1677, 2019 WL 5884353, at *4 (S.D. Ohio Nov. 12, 2019); *Combs v. Twins Grp., Inc.*, No. 3:16-

cv-295, 2016 WL 7230854, at *2 (S.D. Ohio Dec. 14, 2016). Some district courts within the Sixth Circuit have applied a summary judgment evidentiary standard and only consider evidence that would be admissible at trial. *See, e.g.*, *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 867–68 (S.D. Ohio 2005). But most district courts agree that holding a plaintiff to a summary judgment standard prior to discovery would defeat the purpose of the "modest showing" required at conditional certification stage. *See Bailey*, 2019 WL 5884353, at *4 (quoting *Combs*, 2016 WL 7230854, at *3) ("The rationale for applying a less rigorous evidentiary standard" at the conditional certification stage is "sound"). To be sure, the plaintiff bears the burden to produce some evidence that the putative class is similarly situated. *See, e.g.*, *Comer*, 454 F.3d at 547. Though, at this stage, courts do "not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues." *Swigart*, 276 F.R.D. at 214.

The parties' dispute in this motion is two-fold. First, they contend that two different pieces of DOL tip-credit guidance are operative and should guide this Court's assessment of whether the putative class suffered a "single-FLSA violating policy." *Compare* doc. 2 at PageID 31–33, *with* doc. 6 at PageID 78–84. Defendant also questions how Plaintiff could be similarly situated to other putative class members based on his personal knowledge despite spending much of his job delivering pizzas. Doc. 6 at PageID 84–87. Plaintiff counters by pointing out that Defendant's managers communicated to him that all delivery drivers similarly performed non-tipped tasks. Doc. 7 at PageID 112. The Court will address each argument in turn.

### 1. State of the DOL's "Twenty-Percent" Guidance

Until recently, the DOL's dual jobs regulation provided that an employer could take a tip credit if the employee performed "related duties in an occupation that is a tipped occupation" even if the task was not "directed toward producing tips." 29 C.F.R. § 531.56(e) (2012) ("old tip credit rule"). For years, the DOL offered differing interpretations of what constituted a related duty, and

the parties here point to contrasting DOL guidance as the proper standard. *Compare* Doc. 2 at PageID 31–33, *with* Doc. 6 at PageID 78–84. However, the state of the law has changed since the parties submitted briefs in support of, and in opposition, to Plaintiff's motion.

On December 30, 2020, the DOL released a final rule revising the tip credit regulation. *See* Tip Regulations Under the Fair Labor Standards Act (FLSA), 85 Fed. Reg. 86,756 (Dec. 30, 2020) (codified at 29 C.F.R. pts. 10, 516, 531, 578, 579, and 580) ("new tip credit rule"). Now, "[a]n employer may take a tip credit for any hours that an employee performs related, non-tipped duties contemporaneously with his or her tipped duties, or for a reasonable time immediately before or after performing the tipped duties." 29 C.F.R. § 531.56(e)(2) (2021). The new tip credit rule takes effect on March 1, 2021. 85 Fed. Reg. at 86,756. As explained below, DOL's new tip credit rule codified informal guidance issued by the agency in 2009 and 2018.

Prior to the new tip credit rule, the dual jobs regulation permitted employers to take a tip credit for "related," but non-tipped, work performed by tipped employees even if the non-tipped task was not "directed toward producing tips." 29 C.F.R. § 531.56(e) (2012). The dual jobs regulation distinguished between the employee who engages in both tipped and non-tipped work such that he or she had "two occupations" versus the tipped employee who performed non-tipped tasks "part of [the] time" or "occasionally." *Id.* Though the old tip credit rule had gone unchanged -- until now -- since its promulgation in 1967,[2] what constituted "related," non-tipped work performed "part of [the] time" or "occasionally" under the old tip credit rule was the subject of several rounds of DOL interpretative guidance.

In 2009, the DOL issued Opinion Letter FLSA2009-23 ("2009 Opinion Letter") and declined to adopt a specific tipped-to-non-tipped-work ratio that guided when an employer could

---

[2] *Compare* 29 C.F.R. § 531.56(e) (1967) *and* 29 C.F.R.§ 531.56(e) (2012), *with* 29 C.F.R. § 531.56(e)(2) (2021).

6

deduct a tip credit. U.S. Dep't of Labor, Wage & Hour Div., FLSA2009-23, at 3 (Jan. 16, 2009). It explained, "[w]e do not intend to place a limitation on the amount of duties related to a tip-producing occupation that may be performed, so long as they are performed contemporaneously with direct customer-service duties." *Id.* An employer could continue to take a tipped credit for non-tipped work undertaken "a reasonable time immediately before or after performing such direct-service duties." *Id.*

DOL revised this interpretation in 2016 and announced the "twenty-percent" guidance. An updated DOL Handbook provided:

> (2) 29 CFR 531.56(e) permits the employer to take a tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties are not by themselves directed toward producing tips, provided such related duties are incidental to the regular duties of the tipped employees and are generally assigned to the tipped employee. For example, duties related to the tipped occupation may include a server who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee, and occasionally washes dishes or glasses.
>
> (3) However, where the facts indicate that tipped employees spend a substantial amount of time (*i.e., in excess of 20 percent of the hours worked in the tipped occupation in the workweek*) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance.

U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook (DOL Handbook) § 30d00(f)(2), (3) (Nov. 17, 2016) (emphasis added), www.dol.gov/whd/FOH/FOH_Ch30.pdf. In the last ten years, the DOL defended the twenty-percent guidance in amicus briefs submitted to the Eighth, Ninth, and Tenth Circuits. *See Marsh v. J. Alexander's LLC*, 905 F.3d 610, 626 (9th Cir. 2018); *Romero v. Top-Tier Colo. LLC*, 849 F.3d 1281, 1282 (10th Cir. 2017); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 877 (8th Cir. 2011).

The DOL again changed course in 2018 when it issued Opinion Letter FLSA2018-27 ("2018 Opinion Letter") that re-adopted its 2009 Opinion Letter. *See* U.S. Dep't of Labor, Wage & Hour Div., FLSA2018-27, at 1 ("From today forward, this letter, which . . . reproduces below the verbatim text of Opinion Letter FLSA2009-23, is an official statement of WHD policy"). The 2018 Opinion Letter specifically notes that section 30d00(f) of the DOL Handbook -- which contained the twenty-percent guidance -- was amended accordingly. *Id.* The DOL also explained that, in addition to the examples provided in § 531.56(e), employers should reference the Occupational Information Network ("O*NET") to determine whether a tipped employee's non-tipped duties are related to his or her tipped occupation." *Id.*[3]

The new tip credit rule codifies the tip credit guidance announced in the 2009 and 2018 opinion letters. *See* 85 Fed. Reg. at 86,767 ("The Department proposed to amend § 531.56(e) to codify its [2018] subregulatory guidance regarding when an employer can take a tip credit for hours that a tipped employee performs non-tipped duties related to his or her tipped occupation."). Section 531.56(e)(2) directs employers to engage in a two-step analysis before deducting a tip credit. *See id.* "First, the duties must be related to the employee's tipped occupation[.] [S]econd, the employee must perform the related duties contemporaneously with the tip-producing activities or within a reasonable time immediately before or after the tipped activities." *Id.* Like the 2018

---

[3] One district court within the Sixth Circuit declined to defer to the tip credit rule interpretation advanced in the 2018 Opinion Letter. *See O'Neal v. Denn-Ohio, LLC*, No. 3:19-cv-280, 2020 U.S. Dist. LEXIS 5721, at *23 (N.D. Ohio Jan. 14, 2020). In *O'Neal*, the court found the DOL's interpretation unreasonable because the language endorsed in the 2018 Opinion Letter -- "[w]e do not intend to place a limitation on the amount of duties related to a tip-producing occupation that may be performed" -- seemingly contradicted that used in the old tip credit rule, which defined a related non-tipped task as one performed "part of the time" or "occasionally." *Id.* at *18–20. The court also criticized the agency for providing no reasoned explanation behind its adoption of the 2009 Opinion Letter. *Id.* at *20–21. In its final rule, the DOL explained it adopted the new tip credit rule through the notice-and-comment process in part to respond to this criticism from the federal courts. 85 Fed. Reg. at 86,770–71 (citing *O'Neal* as a case where a court "concluded the Department did not sufficiently explain its reasoning for the updated related duties test in its 2018 subregulatory guidance").

Opinion Letter, the new tip rule directs employers to O*NET for guidance on determining when a non-tipped task is related to a tipped employee's occupation. *Id.*

### 2. A Merits Analysis is Inappropriate at Conditional Certification

How the new tip credit rule effects this litigation is not an issue squarely before the Court.[4] "At the notice stage, district courts within the Sixth Circuit typically do not consider the merits of the plaintiff's claims[.]" *Swigart*, 276 F.R.D. at 214. Instead, the Court anticipates that the parties will submit briefing on how the new tip credit rule impacts this case when appropriate.

For the same reason, the Court declines to entertain Defendant's merits argument at this stage. Defendant argues that the interpretation advanced in the DOL's 2018 Opinion Letter should control. Doc. 6 at PageID 78. Defendant cites O*NET guidance that lists supplemental duties of a pizza delivery driver to include "[m]aintain[ing] . . . food-dispensing equipment[,] clean[ing the] inside of machines that dispense food[,]" and writ[ing] customer orders." Doc. 6-2 at PageID 95. Defendant contends that because the non-tipped work Plaintiff performed was related to his core job, the allegation that he and the putative class suffered from a single-FLSA-violating policy fails. Doc. 6 at PageID 81–84.

Notwithstanding the new tip credit rule, Defendant's merits argument is not persuasive at the conditional certification stage. *See, e.g.*, *Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1042 (S.D. Ohio 2018). Therefore, the Court takes no position on whether Defendant's tip credit policy facially violates the FLSA. *See, e.g.*, *Slaughter*, 2020 WL 1929383, at *6–7 (declining to address the defendant's argument that the plaintiff's FLSA claims fails as a matter of law because the non-tipped tasks appeared on O*NET and were therefore related to the plaintiff's core

---

[4] But, when and if it is, the Court expects the parties to fully brief its implications on this litigation. *See, e.g.*, *Esry v. Otb Acquisition, LLC*, No. 4:18-cv-155, 2020 U.S. Dist. LEXIS 107038, at *3 (E.D. Ark. June 17, 2020) (asking the parties to update the court if the DOL's proposed new tip credit rule is finalized).

occupation). Plaintiff has adequately alleged the putative class is unified under common theories of Defendant's alleged statutory violation to satisfy the conditional certification hurdle.

### 3. Plaintiff Has Sufficiently Proven the Putative Class Is Similarly Situated

Defendant takes issue with Plaintiff's factual showing on several fronts. First, Defendant argues that Plaintiff's allegations are based solely on his personal knowledge and from his experience in only two of Defendant's nineteen locations. Doc. 6 at PageID 84. Defendant questions just how many members of the putative class Plaintiff actually worked with considering he was out delivering pizzas during 50–70% of his shifts. *Id.* at PageID 85. Because Plaintiff often left the restaurant, Defendant believes Plaintiff has personal knowledge of the day-to-day responsibilities and compensation of less than half of the "more than 100" members of the putative class. *Id.*

Defendant, however, does not disagree with Plaintiff's allegation that his experience was representative of others in the putative class. Plaintiff explains he and the other delivery drivers were subject to the same last-in-first-out policy such that they completed a proportional amount of non-tipped work. Doc. 2-1 at PageID 46; *see also Myers*, 201 F. Supp. 3d at 894 ("Many courts have held that employee statements regarding their employer's policies and practices and hours worked by other employees were admissible evidence based on the employee's personal knowledge."). Defendant does not dispute that when delivery drivers returned to the restaurant, they performed similar non-tipped work, such as cleaning cooking equipment and taking customer orders. Doc. 2-1 at PageID 45–46. Plaintiff also supports his allegations with statements from his supervisors -- which Defendant does not acknowledge -- that suggest Defendant's managers of other locations staffed delivery drivers similarly to where Plaintiff worked. *Id.* at PageID 45–47. These allegations satisfy the "modest showing" needed at the conditional certification stage. *See*

10

*also Adams v. Wenco Ashland, Inc.*, No. 1:19-cv-1544, 2020 WL 2615514, at *4 (N.D. Ohio May 22, 2020) (quotation omitted) ("A court can conditionally certify a collective action under the FLSA on the strength of a single affidavit or declaration if that document sets forth sufficient facts from which the court may reasonably infer the existence of other employees who were subject to the same wage and work hours policy as plaintiff."); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2017 WL 3500411, at *4 (S.D. Ohio Aug. 15, 2017) (conditionally certifying class of pizza delivery drivers based on the plaintiff's recollection of supervisor statements that delivery drivers were similarly compensated and the plaintiff's observations of how his fellow delivery drivers spent their shifts).

### B. Plaintiff's Proposed Class Notice is Deficient

Under the FLSA, a lawsuit to collect unpaid compensation must "be commenced within two years after the cause of action accrued" unless the plaintiff demonstrates the cause of action arose "out of a willful violation." 29 U.S.C. § 255(a). In the case of a willful violation, the statute of limitation is three years. *Id.* An action is considered to have commenced as to each individual plaintiff when opt-in notice is delivered to the court. 29 U.S.C. § 256.

"If conditional certification is granted, 'plaintiffs are permitted to solicit opt-in notices, under court supervision, from current and former employees.'" *Myers*, 201 F. Supp. 3d at 890 (quoting *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-cv-27, 2015 WL 6662919, at *1 (S.D. Ohio Nov. 2, 2015)). "Courts generally approve only a single method for notification unless there is a reason to believe that method is ineffective." *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1074 (S.D. Ohio 2016). "However, this Court has previously allowed plaintiffs to send notice by ordinary mail and electronic mail in the interest of judicial economy." *Id.* For example, this Court has permitted notice to be sent to current employees by regular mail and former employees by e-mail. *See, e.g.*, *Wolfram v. PHH Corp.*, No. 1:12-cv-599, 2012 WL 6676778, at

\*4 (S.D. Ohio Dec. 21, 2012). Dual service in such instances conserves resources in the event a former employee's address proves outdated. *See, e.g.*, *Lutz v. Huntington Bancshares Inc.*, No. 2:12-cv-01091, 2013 WL 1703361, at \*7 (S.D. Ohio Apr. 19, 2013).

Plaintiff requests that this Court approve the proposed class notice attached to its motion for conditional certification. Doc. 2-2. He asks that notice be provided to all delivery drivers employed by Defendant from May 6, 2017 (three years prior to the filing of the complaint) to the present. Doc. 2 at PageID 39–40. Notice will be delivered to current employees by ordinary mail and to former employees by both regular and electronic mail. *Id.* at PageID 40. The proposed class notice explains to putative class members that they must opt into the class to be entitled to compensation procured from the litigation. Doc. 2-2 at PageID 52. Putative class members are directed to return the opt-in form and direct any questions to Plaintiff's counsel. *Id.* at PageID 52, 55. Defendant does not object to the proposed class notice.

There are several issues with Plaintiff's proposed class notice, and, for that reason the Court directs the parties to confer on a revised proposed class notice to be submitted for Court approval forthwith. If Defendant has no objection to the revised proposed class notice, Plaintiff shall advise the Court -- in a motion seeking approval of such notice -- that such request is unopposed. Any objections to the revised class notice can be brought to the attention of the Court in accompanying memoranda that may be filed within 7 days following any motion for approval of the revised proposed class notice. A reply may be filed within 7 days after the filing of any opposition.

Though Plaintiff seeks to send notice to potential opt-in Plaintiffs employed by Defendant three years prior to the filing of the complaint, "collective-action certification is appropriately limited to the three years prior to the date of approval of the notice, not the filing of the lawsuit." *Myers*, 201 F. Supp. 3d at 897 n.5; *see also Crescenzo v. O-Tex Pumping, LLC*, No. 15-cv-2851,

2016 WL 3277226, at *5 (S.D. Ohio June 15, 2016); *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234, at *3 (S.D. Ohio Feb. 26, 2015). Defendant does not dispute that Plaintiff alleges it willfully violated the FLSA. *See Slaughter*, 2020 WL 1929383, at *10 ("[T]his Court has used a three-year statute of limitations in the past, because a determination of whether FLSA violations are willful is better suited for a later stage of litigation."). Therefore, the proposed class notice should be directed to potential opt-in Plaintiffs employed by Defendant at any time three years prior to the Court's order approving the revised notice.

A revised notice must address two other deficiencies. Plaintiff's proposed notice does not inform putative class members they are entitled to secure their own counsel. *See* Doc. 2-2. "Informing potential plaintiffs of their right to choose their own counsel is an appropriate element in a notice." *Fenley*, 170 F. Supp. 3d at 1073. Accordingly, the revised notice must communicate to putative class members they have the right to select their own lawyer and, if they have any questions about class participation, that they can contact either Plaintiff's counsel or counsel of their own choosing. *See id.*

The revised notice must also set a proposed notice period. "Courts in this District have found 90 days to be an appropriate notice period on many occasions." *Id.* at 1075 (citing cases). If the proposed opt-in deadline deviates from a 90-day period, counsel must explain their reasoning.

Plaintiff's proposed notice method is appropriate. It has been this Court's practice to order notice be sent by mail to current employees and by mail and e-mail to former employees. *See, e.g.*, *Smith v. Generation Healthcare Servs. LLC*, No. 2:16-cv-807, 2017 WL 2957741, at *6 (S.D. Ohio July 11, 2017) (collecting cases), *decertified on other grounds by* 2018 WL 6069095 (S.D. Ohio Nov. 19, 2018). To facilitate notice distribution, Defendant must produce the following

13

information to Plaintiff's counsel about the putative class within 14 days of this Court's order approving the revised class notice: (1) each employee's full name; (2) all known employee addresses; and (3) all e-mail addresses of former employees.

## III.

The Court thus (1) **GRANTS** Plaintiff's motion for conditional class certification, but (2) **DENIES** Plaintiff's motion to approve its proposed class notice.  Doc. 2.  The Court certifies the following class:

> All Defendant's current and former delivery drivers who were subject to Defendant's tip credit policy at any time during the three years prior to the date of this Court's order approving the class notice.

The Court further **ORDERS** the parties to confer and submit to the Court: (1) a revised opt-in class notice and consent form and (2) a distribution plan within 14 days from the date of this Order.  The parties shall inform the Court in writing by that date if any dispute arises over the language in, or distribution of, the revised class notice.

**IT IS SO ORDERED.**


Date:   February 26, 2021                                         s/Michael J. Newman
                                                                  Hon. Michael J. Newman
                                                                  United States District Judge