# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| IAN CRACE, et al., for himself and others similarly situated, | : :  : | |
| Plaintiffs, | : | Case No.: 3:20-CV-176 |
| v. | : | |
| | : | Judge Michael J. Newman |
| VIKING GROUP, INC., | : | Magistrate Judge Caroline H. Gentry |
| | : | |
| Defendant. | : | |

## THE PARTIES' JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

Named Plaintiff Ian Crace ("Named Plaintiff") and Defendant Viking Group, Inc, ("Defendant") (Plaintiffs and Defendant collectively hereinafter the "Parties"), by and through their undersigned counsel, hereby jointly move the Court for entry of an order (1) preliminarily approving a class action settlement pursuant to Fed. R. Civ. P. 23(e) and a collective action settlement pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b); (2) preliminarily certifying Plaintiffs' claims under the Ohio Minimum Fair Wage Standards Act, O.R.C. 4111.01, *et seq*. ("the Ohio Wage Act"); and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"), as a settlement class under Fed. R. Civ. P. 23; (3) appointing Plaintiffs' counsel as class counsel pursuant to Fed. R. Civ. P. 23(g); (4) appointing Analytics, LLC, as the claims administrator; (5) approving the form, content, and manner of notice to the proposed settlement class; and (6) scheduling a final approval hearing.

As explained in the accompanying memorandum of law, the Parties have reached a settlement in which Defendant will make payments to current or former employees (the "Settlement"). In addition to Named Plaintiff, 85 Opt-In Plaintiffs have already joined this action and will be included in the settlement (Named Plaintiff and Opt-In Plaintiffs are collectively referred to as "Plaintiffs"). The settlement class will include all Plaintiffs as well as 773 current and former employees of Defendant who were employed at Defendant at any time between May 6, 2017, and January 17, 2023.

The Parties also jointly request that the Court preliminarily certify a Fed. R. Civ. P. 23 class consisting of all class members solely for the purposes of settlement. To that end, the Parties agree that the numerosity, commonality, typicality, and adequacy requirements of Fed. R. Civ. P. 23(a) are satisfied and that the class claims meet the requirements of Fed. R. Civ. P. 23(b)(3). The parties further agree that Plaintiffs' counsel should be appointed as class counsel pursuant to Fed. R. Civ. P. 23(g) and that Analytics, LLC, should be appointed as the claims administrator for purposes of administering the settlement. Finally, the Parties agree that the proposed form, content, and manner of notice to the settlement classes is reasonably calculated to give adequate notice of the settlement and an opportunity to object to it or opt out of it.

WHEREFORE, for the reasons set forth above and in the memorandum of law in support of this motion, the Parties jointly request that the Court enter an order:

1. Approving the Settlement as fair, reasonable, and adequate under 29 U.S.C. § 216(b);

2. Preliminarily approving the Settlement as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e);

3. Granting certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of a settlement class as defined by the Parties in the accompanying memorandum;

4. Appointing Bradley L. Gibson and Angela J. Gibson of Gibson Law, LLC, as class counsel pursuant to Fed. R. Civ. P. 23(g);

5. Appointing Analytics, LLC, as the claims administrator for purposes of administering the settlement;

6. Approving the form, content, and manner of the notices to the proposed Settlement Classes; and

7. Setting a final approval hearing on a schedule consistent with the Parties' Settlement Agreement and the Court's calendar.

| | |
|---|---|
| **TAFT STETTINIUS & HOLLISTER, LLP** | **GIBSON LAW, LLC** |
| By: /s/ Justin D. Flamm (per email authority)<br>Justin D. Flamm (0071575)<br>TAFT STETTINIUS & HOLLISTER LLP<br>425 Walnut Street, Suite 1800<br>Cincinnati, OH 45202 - 3957<br>Telephone: (513) 381-2838<br>Facsimile: (513) 381-0205<br>flamm@taftlaw.com<br><br>*Attorney for Defendant* | By: /s/ Bradley L. Gibson<br>Bradley L. Gibson (0085196)<br>Angela J. Gibson (0080928)<br>Gibson Law, LLC<br>9200 Montgomery Road<br>Suite 11A<br>Cincinnati, OH 45242<br>Telephone: (513) 834-8254<br>Facsimile: (513) 834-8253<br>brad@gibsonemploymentlaw.com<br>angela@gibsonemploymentlaw.com<br><br>*Attorneys for Plaintiff Ian Crace and all Opt-in Plaintiffs* |

<u>**MEMORANDUM IN SUPPORT**</u>

**I.     PRELIMINARY STATEMENT**

The Parties' Motion for Preliminary Approval of Class and Collective Action Settlement and Certification of Settlement Class contemplates the settlement of a collective and class action lawsuit brought by Named Plaintiff Ian Crace ("Named Plaintiff"), on behalf of himself and those similarly situated, and Defendant Viking Group, Inc. d/b/a Donato's ("Defendant") (collectively, "Parties"). Named Plaintiff, on behalf of himself and those similarly situated, filed his Collective and Class Action Complaint on May 6, 2020, against Defendant and alleged that Defendant failed to pay employee food delivery drivers the legally required minimum wage amounts in violation of Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. 4111 *et seq.* ("the Ohio Wage Act"); and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"). (<u>See</u> ECF Doc. #1). Specifically, Named Plaintiff asserts, on behalf of himself and those similarly situated, that Defendant unlawfully paid the food delivery driver employees the tipped hourly minimum wage, as opposed to the normal hourly minimum wage, for time they worked performing certain duties at the respective restaurants they worked. (<u>Id.</u> at ¶¶52 – 78).

This Court granted Plaintiff's Motion for Conditional Class Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs on February 26, 2021. (<u>See</u> ECF Doc. #13). Eighty-five employee food delivery drivers opted into this litigation by filing their consent forms, thereby becoming party plaintiffs. (<u>See</u> ECF Doc. ##18, 19, 20, 21, 23, 24, 25, 26, 27, 28, & 29).

The Parties have engaged in extensive, time-consuming litigation so far in this matter. Defendant has produced thousands of pay records for the Named Plaintiff, Opt-In Plaintiffs, and

other putative class members. Plaintiffs' class counsel has responded to written discovery requests on behalf of a sample of 33 Opt-In Plaintiffs the Parties initially agreed to conduct discovery. Named Plaintiff has sat for his deposition.

Plaintiffs' class counsel was able to use that information to calculate a reasonable settlement demand on behalf of the proposed class. The Parties engaged in a day-long mediation on January 6, 2023, with the assistance of an experienced mediator, Stephen Calardo. During the mediation, the Parties came to a settlement agreement as set forth in the Settlement Agreement. The Settlement Agreement requires Defendant to pay a total settlement amount of $1,000,000.00, which exceeds the total unpaid minimum wage amount Plaintiffs' class counsel has calculated owed to the Named Plaintiff, Opt-In Plaintiffs, and other putative class members.

The Parties respectfully request the Court to enter an order that: (1) approves the settlement as required under 29 U.S.C. § 216(b); (2) preliminary approves the settlement as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e); (3) grants certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of a settlement class as defined by the Parties below; (4) appoints Bradley L. Gibson and Angela J. Gibson of Gibson Law, LLC, as class counsel pursuant to Fed. R. Civ. P. 23(g); (5) appoints Analytics, LLC, as the claims administrator for purposes of administering the settlement; (6) approves the form, content, and manner of the notices to the proposed Settlement Classes; and (7) set a final approval hearing on a schedule consistent with the Parties' Settlement Agreement and the Court's calendar.

## II.     RELEVANT PROCEDURAL AND FACTUAL BACKROUND

### A.     Plaintiffs Assert Unpaid Minimum Wage Claims

Plaintiffs are food delivery drivers for Defendant who worked for Defendant during sometime between May 6, 2017, and January 17, 2023.  Defendant is a Donato's franchisee which owns and operates 17 restaurants throughout the greater Dayton, Ohio area.  (ECF Doc. #1, ¶2).  Plaintiffs allege that Defendant failed to pay them the required minimum wages under the FLSA and the Ohio Wage Act by paying the "tipped hourly" minimum wage while they performed certain work within the restaurants.  (Id. at ¶¶90 - 100).

The FLSA and Ohio Wage Act allow employers to pay the employees a tipped hourly minimum wage under certain circumstances.  See 29 U.S.C. 203(m).   The tipped hourly wage is below the normal minimum wages, as it is $2.13 under the FLSA and half the normal minimum wage under the Ohio Wage Act (e.g., $4.35 in 2020 under Ohio law).  Employers are prohibited from paying employees below the normal minimum wage under the FLSA and Ohio Wage Act for time the employees spend performing work that is not part of the employees' tipped occupation.  See 29 C.F.R. § 10.28(b)(3).  Work is part of an employee's tipped occupation if it is either: (1) work that produces tips (e.g., server taking orders); or, (2) work that directly supports the tip-producing, so long as the directly supporting work is not performed for a substantial amount of time.  Id. at 10.28(b)(3)(i)(A) – (B).

The FLSA regulations state work that "directly supports" the tip-producing work is "work performed by a tipped employee in preparation of or to otherwise assist tip-producing customer service work."  Id. at 10.28(b)(3)(iii).  The regulations provide examples for a number of different tipped occupations showing that the directly supporting work is work that specifically prepares the employees to provide a service to the customers from whom they want to receive tips.  The

regulations indicate that a server's directly supporting work includes dining room prep work, such as refilling salt and pepper shakers and ketchup bottles, rolling silverware, folding napkins, sweeping and vacuuming under tables in the dining area, and setting and bussing tables. Id. at 10.28(b)(3)(iii)(B).

Plaintiffs allege that Defendant had a policy and practice of unlawfully paying them the tipped hourly wage for performing tasks within the restaurant that had nothing to do with their tipped work of delivering foods. (See ECF Doc. #1, ¶¶30 – 32). Plaintiffs allege such tasks included washing pizza dishes, cleaning the restaurant, unloading deliveries and more. (Id.). Plaintiffs also allege that Defendant had a policy and practice of unlawfully paying them the tipped hourly wage for them spending a substantial amount of their time within the restaurant performing work in which they did not receive a tip. (Id. at ¶31).

**B.**   **Parties Engaged in Significant Discovery and a Mediation.**

Named Plaintiff filed a Motion for Conditional Class Certification Court-Supervised Notice to Potential Opt-In Plaintiffs on July 10, 2020. (ECF Doc. #2), which this Court granted on February 26, 2021 (ECF Doc. #13), conditionally certifying an FLSA collective action. Notice was mailed to the potential FLSA collective action members, with 85 Viking Group employees opting into the Litigation by filing consent forms, thereby becoming party plaintiffs. (See ECF Doc. ##18, 19, 20, 21,23, 24, 25, 26, 27, 28, & 29).

Defendant served written discovery requests on Named Plaintiff and all 85 opt-in plaintiffs. (Bradley L. Gibson Declaration, ¶14 ("B. Gibson Dec., ¶__")).[1] The Parties agreed thereafter, with the Court's assistance, to initially require that a randomized sample of 33 opt-in plaintiffs and

---

[1] Attached hereto as Exhibit A is the Declaration of Bradley L. Gibson.

Named Plaintiff respond to Defendant's written request.  (Id.).  The randomized sample included an opt-in plaintiff from each of Defendant's restaurants.  (Id.).  Class Counsel spent significant time conferring with the opt-in plaintiffs within that randomized sample to receive the requested responsive information to Defendant.  (Id.).  Additionally, Defendant deposed Named Plaintiff. (Id.).

Defendant responded to Plaintiffs' written discovery requests by producing thousands of pay and time records for the Named Plaintiff, Opt-In Plaintiffs, and putative class members. (Id.). The documents Defendant produced provided Plaintiffs' class counsel significant information, including but not limited to, showing when the delivery drivers were in the restaurant and the minimum wage amount Defendant paid the delivery driver during the time they were in the store. (Id.).  Plaintiffs' class counsel was able to use those records, along with their meetings with the sample Opt-In Plaintiffs, to calculate a demand on behalf of the class of delivery drivers.  (Id. at ¶15).

On January 6, 2023, the Parties engaged in a day-long mediation with Stephen Calardo serving as the mediator.  (Id. at ¶16).  The Parties reached a settlement of this litigation during the mediation based upon the stated terms and conditions, which are set forth in this Settlement Agreement[2] that resolves all claims asserted in this lawsuit.  (Id.)  Based on their extensive investigation, Plaintiffs' counsel is of the opinion that the terms set forth in the Settlement Agreement are fair, reasonable, adequate, and in the best interest of the class and collective in light of the risk of significant delay, cost and uncertainty associated with litigation, including Defendant's defenses.  (Id. at ¶17).

---

[2] Attached hereto as Exhibit B is the Class Action Settlement and Release Agreement.

### C.    Terms of the Settlement Agreement

The Settlement Agreement provides substantial relief for Defendant's delivery driver employees, including the 85 Plaintiffs who have already joined the Litigation.  (Id. at ¶18).

The Settlement Agreement provides that Defendant, without conceding the validity of the Plaintiffs' claims and without admitting liability, will create a total settlement fund of $1,000,000.00 ("Settlement Fund") to resolve the Litigation.  (Settlement Agreement, ¶19; B. Gibson Dec. ¶16).  The Parties agree that a settlement class should be certified as a Rule 23 class, as defined below:

> All persons who work or worked as delivery drivers or similar employees for
> for the Viking Group, Inc. in Ohio between May 6, 2017 through January 17, 2023
> (the "Settlement Class")

(Settlement Agreement, ¶5).

The Settlement Fund will provide Settlement Class Members with their pro rata share of damages resulting from Plaintiffs' claims made in the Litigation, including unpaid minimum wage based on when the delivery drivers worked in the stores while being a tipped minimum hourly rate. (Id. at ¶21).  The Settlement Fund represents more than 100% of the maximum unliquidated minimum wage damages calculated by Class Counsel.  (B. Gibson Dec., ¶19).  Defendant disputes the maximum alleged unpaid minimum damages calculated by Class Counsel and instead believes that the total settlement fund exceeds the maximum recoverable damages in the Litigation. Although 103 of the settlement payments will be at the agreed upon minimum amount of $20.00 due to the pro rata share (based on the number of hours the employee worked and length of employment), the remaining 742 settlement payments exceed this amount with the highest payment in excess of $5,700.00.  (Id. at ¶19).

In addition, the Settlement Agreement provides for a modest collective and class representative enhancement payment to the Named Plaintiff for his efforts assisting Plaintiffs' counsel with the litigation.  (Settlement Agreement, ¶23).  Specifically, Named Plaintiff will receive an enhancement payment of $10,000.00. (Id.). Named Plaintiff has assisted in the prosecution of the Litigation by providing extensive factual information to Plaintiffs' counsel, responding to written discovery, sitting for deposition, attending mediation, providing sworn statements, and otherwise providing material information to Plaintiffs' counsel above and beyond the normal course.  (B. Gibson Dec. ¶20).

As for attorneys' fees and costs, Plaintiffs request attorneys' fees in the amount of 1/3 of the total common fund of $1,000,000.00, or $333,333.33 ("Class Counsel Award").  (Settlement Agreement ¶24; B. Gibson Dec. ¶25).  The Class Counsel Award will be approved by the Court in its final order approving the settlement.  (Settlement Agreement, ¶19).  Plaintiffs' costs associated with the prosecution of the Litigation will be paid after deducting 1/3 of the Settlement Fund for attorneys' fees and will be made in addition to the Class Counsel Award (Id. at ¶24).  Finally, Defendant has agreed to distribute communication to its delivery driver employees concerning the Settlement Agreement. (Settlement Agreement, Exhibit 3).

### D.  Notice Procedure

The Settlement Agreement provides for notice to be issued to the Settlement Class (Settlement Agreement, ¶¶26 - 28). The Notice of Collective and Class Action Lawsuit Settlement is attached as Exhibit 4 ("Settlement Notice"). The Settlement Notice shall inform the Settlement Class members of the pendency of this lawsuit; the terms of the proposed settlement; the amount of their individual settlement payments; their right to opt out of the settlement or object to it; and the date of the Final Approval Hearing. (Id.). Within 24 days after entry of an order approving the notices, the Claims Administrator shall mail the Settlement Notice, as approved by the Court, by First Class U.S. Mail

to the putative members of the settlement class. (Id. at ¶ 26-36). Following the mailing of the notices, the putative members of the Settlement Class will have 45 days from the date of mailing to submit any objections to the settlement or to opt out of the settlement. (Id.).

The Parties will file a motion for final approval after the close of the opt- out and objection periods. The Parties request that the Court schedule a Final Approval Hearing after the close of the opt-out and objection periods. (Id. at ¶¶25 & 28). If the Court grants final approval, the claims of all Settlement Class members who did not opt out of the lawsuit will be dismissed with prejudice, the Settlement Class members will release the wage and hour claims described below, and they will be mailed their proportionate share of the Settlement Fund by the Claims Administrator. (Id. at ¶ 33). The Settlement Class members who do not opt out of the Settlement will release Defendant from all federal and state wage-and-hour claims, rights, demands, liabilities, and causes of action of every nature and description, including but not limited to those claims for unpaid minimum wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses alleged in the Litigation, whether known or unknown, pursuant to the FLSA, the Ohio Minimum Fair Wage Standards Act O.R.C. 4111.03-4111.08; and the Ohio Prompt Pay Act, O.R.C. 4113.15 for the Released Period. (Id. at ¶33). The Settlement Class members who do not opt out of the settlement will be issued individual settlement payments by the Claims Administrator in the form of a "Settlement Check." (Id. at ¶29).

## III.    LAW AND ARGUMENT

Insofar as the Settlement Agreement proposes to settle claims brought under the Ohio Acts and FLSA as agreed to between the parties, the settlement is subject to approval by the Court under Fed. R. Civ. P. 23(e) and 29 U.S.C. § 216(b). As explained below, approval is warranted under both provisions.

A. **Preliminary Approval of the Settlement Under Rule 23(a) and (b) is Appropriate**

1. **Certification of the Settlement Class is Appropriate**

A proposed settlement class must satisfy the requirements of Fed. R. Civ. P. 23. UAW v. General Motors Corp., 497 F.3d 615, 626 (6th Cir. 2007), citing, Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997). The proposed Settlement Class satisfies those requirements.

The proposed Rule 23 Settlement Class meets the requirements of numerosity, commonality, typicality, and adequacy of representation set forth in Fed. R. Civ. P. 23(a). Senter v. General Motors Corp., *532 F.2d 511* (6th Cir.), cert. denied, 429 U.S. 870 (1976); UAW v. General Motors Corp., 497 F.3d at 626. The proposed Settlement Class, consisting of approximately 845 members, is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a).

The Plaintiffs assert that there are questions of law or fact that are common to the Settlement Class. For example, legal conclusions regarding whether or not certain tasks the delivery drivers performed in the store either produced tips or directly supported them making tips are common questions of law that apply to the entire class, which could decide whether or not Defendant properly paid the delivery drivers under the Ohio Acts. The claims of the Plaintiffs are typical of a Rule 23 settlement class. The Named Plaintiff is an adequate representative given that he has common interests with the Settlement Class members. Rutherford v. City of Cleveland, 137 F.3d 905 (6th Cir. 1998).

The Settlement Class further satisfies Rule 23(b)(3)'s requirements of predominance and superiority for settlement purposes. Senter, 532 F.2d at 522; UAW, 497 F.3d at 626. The issues presented are based on alleged uniform policies and practices that apply to all members of the Settlement Class. The common issues predominate over questions affecting all members of the

Settlement Class. Named Plaintiff alleges these practices apply to all members of the Settlement Class, making questions of law and fact that are common to the members of the Settlement Class predominate over individualized issues.

In addition, class-wide resolution of this controversy is superior to the alternative of litigating over 1,027 individual suits. General Tel. Co. v. Falcon, 457 U.S. 147, 159 (1982)(class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); Day v. NLO, 851 F.Supp. 869, 883 (S.D. Ohio 1994)(of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims")

## 2. The Proposed Notice Satisfies Rule 23 and Due Process

Federal Rule of Civil Procedure 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. Bailey v. White, 320 Fed.Appx. 364 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." UAW, 497 F.3d at 626, citing, Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

Reasonable notice to Settlement Class members is required by due process as well. Fidel v. Farley, 534 F.3d 508, 513 (6th Cir. 2008), citing, DeJulius v. New England Health Care Employees Pension Fund, 429 F.3d 935, 943-944 (10th Cir.2005); Mullane, 339 U.S. at 313; Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974). Due process "does not, however, require actual notice to each party intended to be bound by the adjudication of a representative action." Fidel, 534 F.3d at 514 (6th Cir. 2008), citing, DeJulius, 429 F.3d at 944; Mullane, 339 U.S. at 313-14; In re Integra Realty Res., Inc., 262 F.3d 1089, 1110-1111 (10th Cir. 2001); Silber v. Mabon, 18 F.3d

1449, 1453-54 (9th Cir.1994). The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." Fidel, 534 F.3d at 514, quoting, Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993).

The "individual notice" requirement of Rule 23(e) and due process is fulfilled by sending written notice to class members by first-class mail, at the addresses shown in the defendant's business records. Grunin v. International House of Pancakes, 513 F.2d 114, 120 (8th Cir. 1975), cert. denied, 423 U.S. 864 (1975). Such notice is the "best notice practicable" in a class action. Grunin, 513 F.2d at 121; Eisen, 417 U.S. at 175.

In the present case, the proposed Notice satisfies these requirements. Under the terms of the Settlement Agreement, the notice will be sent to the Settlement Class members by first-class mail using the addresses shown in Defendant's records within 24 days of a preliminary approval order. (Settlement Agreement, ¶25.e). The notice informs the Settlement Class members of the claims asserted in the lawsuit, explains the structure of the Settlement, sets forth each individual's anticipated individual settlement payment, and provides them with the ability to seek more information and copies of the settlement documents from the Claims Administrator or Class Counsel. (See Exhibit 4 to Settlement Agreement). The Notice also informs the Settlement Class members of their rights to opt out of the Settlement or object to it and provides them with an opportunity to do so within 45 days of the mailing of the notice. Any notices returned to the claims administrator as undeliverable will be skip traced once to obtain a new address to which they shall be re-mailed. (Id. at ¶30) This process is reasonably calculated to apprise the Settlement Class members of the pendency of the settlement and afford them an opportunity to present their objections or opt out of the settlement. See Mitchell v. Independent Home Care, Inc., No. 2:17-cv-

717, ECF Nos.40, PAGEID # 377-78 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.) and ECF No. 41 (S.D. Ohio Mar. 12, 2019) (Watson, J.) (approving R&R).

### B.  Preliminary Approval of Settlement under Rule 23(e) is Appropriate.

Under Federal Rule of Civil Procedure 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard discussed below. UAW v. General Motors Corp., 497 F.3d 615, 626, citing, Granada Invs., Inc. v. DWG Corp., 962 F.2d 1203, 1205 (6th Cir.1992); Williams v. Vukovich, 720 F.2d 909, 922-923 (6th Cir.1983). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." Franks v. Kroger Co., 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and they readily lend themselves to compromise. 4 Newberg On Class Actions §11.41 (4th ed. 2007). Therefore, when considering the seven factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. Dail v. George A. Arab, Inc., 391 F.Supp.2d 1142, 1145-1146 (M.D. Fla. 2005), citing, Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977); Sweet v. General Tire & Rubber Co., 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

### 1.  The Seven-Factor Standard Is Satisfied

The Sixth Circuit uses seven factors to evaluate class action settlements: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. UAW, 497 F.3d at 626. And, unlike Rule 23 class certification for purposes of litigation, certification of a Rule 23 class solely for the purposes of settlement does not require the court to engage in an analysis of manageability. Amchem Products, Inc. v. Windsor, 521 U.S. 591,

syl. 2(b), 620 (1997)("whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial"). As explained below, the seven-factor standard supports approval of the settlement in this case.

### a. No Indicia of Fraud or Collusion Exists

The Parties reached a settlement in this case following contentious litigation, extensive review and computation of damages, and prolonged settlement negotiations that culminated in a day-long mediation with an experienced mediator who has assisted in similar wage-and-hour actions. As such, there is no indicia of fraud or collusion.

### b. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of class actions and other complex cases applies with particular force here. As this Court observed, "the Court notes that wage and hour class and collective actions, such as this, are inherently complex and time-consuming." Brandenburg v. Cousin Vinny's Pizza, LLC, No. 3:16-CV-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019) (Rice, J.).

As this Court is aware, this litigation is inherently complex because it involves claims of unpaid minimum wage due to whether or not the delivery drivers were entitled to be paid the normal minimum wage while performing certain tasks within the restaurants. Virtually every issue in this litigation contested and the Parties vigorously advocated for their respective positions. Indeed, since the Named Plaintiff filed this action, the U.S. Department of Labor proposed conflicting regulations regarding under which circumstances employers are allowed to pay employees a tipped hourly wage.

Additionally, the Parties disagree as to whether the two-year limitations period for non-willful violations or a three-year limitations period for willful violations applies under the FLSA. Defendant claims that even if the Plaintiffs succeed on the merits (even though Defendant contends Plaintiffs will not be successful), they cannot prove a willful violation of the law, and thus, only a two-year limitation period would apply under the FLSA. Further, Defendant asserts that, because it acted in good faith, no liquidated damages under the FLSA should be awarded even if the Plaintiffs prevail on their claims. Thus, if forced to litigate this case further, the Parties would engage in complex, costly, and protracted litigation. The settlement, on the other hand, provides substantial relief to the Plaintiffs and the settlement class promptly and efficiently, and amplifies the benefits of that relief through the economies of class-wide resolution. Accordingly, the litigation was difficult and complex and weighs in favor of the settlement.

c. ***The Parties Sufficiently Investigated the Claims and Defenses Asserted***.

The Parties engaged in substantial investigation prior to commencing and throughout this litigation prior to negotiating a potential resolution. The Parties exchanged written discovery and relevant information, including detailed payroll information and other business records of Defendant. In addition, Class Counsel engaged in further independent investigation of the facts, reviewed pay data, performed damages calculations, and conducted additional legal research regarding the claims and defenses in the lawsuits. Thus, the legal issues were thoroughly researched by the Parties and the value of the claims properly assessed.

d. ***The Likelihood of Success on the Merits, as well as the Risks of Litigation and Uncertainty of Recovery, Favor Approval.***

Counsel for both sides believe in the merits of their clients' positions and have vigorously represented their clients' interests throughout the Litigation, but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result. For example, the settlement provides

relief to the settlement class members and eliminates the risks that the Parties would otherwise bear if the litigation were to continue on for more years, which favors this factor. See Barnes v. Winking Lizard, Inc., No. 1:18CV952, 2019 WL 1614822, at *3 (N.D. Ohio Mar. 26, 2019) (citing Foster v. Nationwide Mut. Ins. Co., 710 F.3d 640 (6th Cir. 2013) (affirming bench trial verdict that special investigators were properly classified as exempt from the overtime pay requirements of the FLSA).

Absent settlement, the Parties would have engaged in significant discovery, including, but not limited to responses to discovery requests of many, if not all of the Opt-In Plaintiffs, many depositions, discovery-related motion practice, further testimony at any additional hearings, and other motion practice (Rule 23 class certification, FLSA collective decertification, dispositive motions on the merits and damages issues). Further, even if they prevail on the merits, any recovery could be significantly curtailed if a jury concludes that Defendant acted in good faith and Plaintiffs fail to establish a willful violation of the law. Moreover, an appeal could be filed.

On the other hand, Defendant faces the prospect of class-wide liability to 845 current and former employees, as well as liquidated damages and attorney's fees following lengthy and expensive litigation. These considerations all support approval of the settlement. Indeed, by agreeing to the settlement, these risks are eliminated, and participating class members are guaranteed to receive a meaningful recovery now, rather than possibly receiving a recovery years from now (or not receiving any recovery ever). Barnes, 2019 WL 1614822, at *3; see also Hall v. U.S. Cargo and Courier Service, LLC, 2019 WL 6001198 at *4 (S.D. Ohio Nov. 14, 2019) (Sargus, J) (denying defendant's request for costs following a jury trial in a FLSA collective action).

### e. The Opinions of Class Counsel and Representative Plaintiffs Favor Approval

The Parties' counsel are experienced in wage-and-hour class and collective actions, have acted in good faith, and have represented their clients' best interests in reaching this Settlement. And, for the reasons set forth above, Class Counsel is of the opinion that the Settlement is a fair, reasonable, and adequate resolution of this Litigation. Likewise, Named Plaintiff agrees that the settlement is fair and reasonable, and he assents to the terms of the Settlement.

### f. The Reaction of Absent Class Members Will Likely Favor Approval.

Absent class members will not be informed of the Settlement until notice is authorized by the Court. The Settlement Class members will receive substantial relief as a result of the settlement, including monetary relief by way of settlement payments.

### g. The Public Interest Favors Approval

Approval of a fair and reasonable agreement promotes the public's interest in encouraging settlement of litigation. Edwards v. City of Mansfield, 2016 U.S. Dist. LEXIS 64159, *10 (N.D. Ohio May 16, 2016); Williams v. K&K Assisted Living LLC, 2016 U.S. Dist. LEXIS 9310, *3 (E.D. Mich. Jan. 27, 2016) (district courts may approve FLSA settlements "in order to promote the policy of encouraging settlement of litigation"), quoting, Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div., 679 F.2d 1350, 1354 (11th Cir. 1992). Settlement agreements assure that plaintiffs will receive compensation for the alleged violations at issue. As one district court in this Circuit explained, "the certainty and finality that comes with settlement also weighs in favor of approving a fair and reasonable settlement." Edwards, 2016 U.S. Dist. LEXIS 64159 at *10. The same is true here. The Settlement Agreement promotes public interest by providing fair and efficient payments to the

settlement class members, avoiding the continued expenditure of judicial resources on protracted complex litigation, and eliminating the risks that both parties face through the litigation process.

2. **The Settlement Distributions are Fair, Reasonable, and Adequate.**

As part of the scrutiny it applies to a class and collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." Crawford v. Lexington-Fayette Urban County Government, 2008 WL 4724499, *9 (E.D. Ky. Oct. 23, 2008), citing, Ortiz v. Fibreboard Corp., 527 U.S. 815, 855 (1999).

In the present case, the settlement establishes a pool of settlement funds that will be divided among the Settlement Class members who do not opt out of the settlement on a pro rata basis based upon their calculated damages. This ensures an equitable distribution of settlement proceeds that is directly tied to the claims and harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds.

a. *The Individual Payments are Reasonable and Adequate.*

With respect to the settlement payments to the Settlement Class members, the individual payments are reasonable. The total Settlement Fund represents more than 100% of the maximum unliquidated unpaid minimum wage damages calculated by Class Counsel. (B. Gibson Dec., ¶19). Defendant disputes the maximum alleged minimum wage damages calculated by Class Counsel and instead believes that the total settlement fund exceeds the maximum recoverable damages in Litigation. Although 103 of the settlement payments will be less than $20.00, the remaining 742 settlement payments exceed this amount with the highest payment in excess of $5,700.00. (Id.). The Settlement Fund and individual settlement payments represent a reasonable and adequate resolution of the settlement class members' overtime claims.

### b. Representative Plaintiffs' Service Awards are Reasonable.

Service awards to representative plaintiffs recognizing the value of their services on behalf of other participants are proper. The Sixth Circuit declared that "numerous courts have authorized incentive awards [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." Hadix v. Johnson, 322 F.3d 895, 897 (6th Cir. 2003); accord Osman v. Grube, Inc., No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *4-5 (N.D. Ohio May 4, 2018). As stated in In re Dunn & Bradstreet Credit Services Customer Litigation, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent. 130 F.R.D. at 373 (citing Wolfson v. Riley, 94 F.R.D. 243 (N.D. Ohio 1981); Bogosian v. Gulf Oil Corp., 621 F. Supp. 27, 32 (E.D. Pa. 1985); In re Minolta Camera Products Antitrust Litigation, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." In re Southern Ohio Correctional Facility, 175 F.R.D. 270, 273-76 (S.D. Ohio 1997). Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." Dun & Bradstreet, 130 F.R.D. at 374, citing, In re Jackson Lockdown/MCO Cases, 107 F.R.D. 703, 710 (E.D. Mich. 1985), see also, Enterprise Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 250 (S.D. Ohio 1991)(among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

As this Court recently echoed, such awards are common in class action settlement and routinely approved for the simple reason: "to compensate [plaintiffs] for the services they provided

and the risks they incurred during the course of the class action litigation." Kritzer v. Safelite Solutions, LLC, No. 2:10-cv0729, 2012 WL 1945144 at *8-9 (S.D. Ohio May 30, 2012).

In the present case, Named Plaintiff's participation in this litigation was crucial and the requested payment amount reflects his contributions. Named Plaintiff assisted in providing extensive factual information to Plaintiffs' counsel, faithfully communicating with Plaintiffs' counsel, subjecting himself to the responsibilities of serving as Named Plaintiff, responding to written discovery, testifying at deposition, attending the mediation, and otherwise providing material information to Plaintiffs' counsel above and beyond normal course. (B Gibson Dec. ¶ 20). Named Plaintiff also attached his name to publicly filed lawsuit against an employer that dominates where he lives. Osman, 2018 U.S. Dist. LEXIS 78222, at *5 (citing Sand v. Greenberg, 2011 U.S. Dist. LEXIS 155013, 2011 WL 784602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting").

For Named Plaintiff's efforts, he is requesting a service payment of $10,000.00. (Settlement Agreement, ¶23; B. Gibson Dec. ¶20). The proposed service payment Named Plaintiff request is within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. See Al-Sabur, et al. v. ADS Alliance Data Systems, Inc., No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an Opt-In Plaintiff); Mullins v. S. Ohio Pizza, Inc., No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) ($10,000 service award for each named plaintiff); Brandenburg v. Cousin Vinny's Pizza, LLC, No. 3:16-CV-516, 2019 WL 6310376, at *8 (S.D. Ohio Nov. 25, 2019) (Rice, J.) ($10,000 service award for each named plaintiff); Arledge v. Domino's Pizza, Inc., No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6

(S.D. Ohio Oct. 17, 2018) (Rice, J.) ($10,000 service award for each named plaintiff); Swigart v. Fifth Third Bank, 2014 WL 3447947 *7 (S.D. Ohio July 11, 2014)(approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 hybrid action).

### C. Approval of the Settlement under the FLSA is Appropriate.

The court presiding over an FLSA action may approve a proposed settlement of the action under Section 16(b) of the FLSA "after scrutinizing the settlement for fairness." Landsberg v. Acton Enterprises, Inc., No. C2-05-500, 2008 WL 2468868, at *1, n.1 (S.D. Ohio June 16, 2008) (quoting Lynn's Food Stores, Inc. v. U.S., 679 F.2d 1350, 1353 (11th Cir. 1982)). As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] collective action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" Crawford v. Lexington-Fayette Urban County Gov't, No. 06-299-JBC, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008).

The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. McKenna v. Champion Int'l Corp., 747 F.2d 1211, 1213 (8th Cir. 1984)(explaining that FLSA collective actions do not implicate the same due process concerns as Rule 23 actions because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date"). Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1358, fn.8 (11th Cir. 1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. Id. at 1353-1354. Thus, if the proposed settlement reflects a reasonable compromise

over contested issues, a court should approve the settlement. Id. at 1354. In this case, as detailed above, the Settlement was a result of arm's-length negotiations resulting in a reasonable, fair, and adequate resolution for the settlement class members. This Court should approve the proposed Settlement.

D. **The Attorney's Fees as Percentage of Common Fund as well as Reimbursement of Costs to Plaintiffs' Counsel Are Proper and Reasonable.**

1. **The Mandatory Provisions of Attorney Fees and Costs under the FLSA and the Ohio Wage Act**

The mandatory prevailing plaintiff's attorney's fees provision of the FLSA and the Ohio Wage Act exist to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of each Act. As more fully outlined below, Plaintiffs seek approval of the amount agreed upon by the Parties in the Settlement Agreement (one-third of the common settlement fund) for payment in full of Class Counsel's attorneys' fees as well as reimbursement of advanced costs and expenses incurred in the prosecution of the Litigation. In particular, Plaintiffs request a fee award in the amount of $333,333.33 and reimbursement of reasonable expenses incurred in the amount of $16,488.83 for payment of Class Counsel's costs advanced in this litigation. (Settlement Agreement, ¶24). Defendant does not oppose this request.

The FLSA has a fee-shifting provision which provides that reasonable attorney fees and costs should be awarded to a prevailing party. 29 U.S.C. §216(b).[3] The federal courts have long recognized the profound importance of plaintiffs' right to recover attorney's fees under the FLSA. In United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, Local

---

[3] The Ohio Wage Act also provides for the recovery of attorneys' fees and costs, but the analysis will be limited to the right to attorneys' fees and costs under the FLSA.

307, et al. v. G & M Roofing and Sheet Metal Co., Inc., 732 F.2d 495, 501 (6th Cir. 1984), the Court recognized that an award of attorney's fees is mandatory under 29 U.S.C. §216(b). The Court explained, that "the purpose of §216(b) is to insure effective access to the judicial process by providing attorneys for prevailing plaintiffs with wage and hour grievances; [o]bviously Congress intended that the wronged employee should receive his full wages…without incurring any expense for legal fees or costs." Id. (quoting Maddrix v. Dize, 153 F.2d 274, 275-76 (4th Cir. 1946)). Plaintiffs "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (quoting S. Rep. No. 94-1011, at 4 (1976), 1976 U.S.C.C.A.N. at 5912).

The FLSA does not establish what constitutes a reasonable fee; consequently, "[t]he determination of a reasonable fee must be reached through an evaluation of a myriad of factors, all within the knowledge of the trial court, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees." United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing and Sheet Metal Co., 732 F.2d 495, 501 (6th Cir. 1984). That determination is informed by both the purpose and practical operation of the FLSA. "The purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'" Fegley v. Higgins, 19 F.3d 1126, 1134 (6th Cir. 1994) (quoting United Slate, 732 F.2d at 502).

The nature of FLSA unpaid minimum wage awards usually focuses the Court on the vindication of statutory rights rather than the amount recovered. "Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees [in a FLSA case] 'encourage[s] the vindication of congressionally identified policies and rights.'" Fegley, 19

25

F.3d at 1135 (quoting United Slate, 732 F.2d at 503). Accord City of Riverside v. Rivera, 477 U.S. 561, 574 (1986) ("reject[ed] the proposition that fee awards . . . should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers").

### 2. The Common Fund Approach is Appropriate

The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Boeing C. v. Van Gemert, 444 U.S. 472, 478 (1980). The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement. Rawlings v. Prudential Bache Prop., Inc., 9 F.3d 513, 515–16 (6th Cir. 1993); see also Lonardo v. Travelers Indemnity Co., 706 F. Supp. 2d 766, 790 (N.D. Ohio 2010) (the percentage-of-the-fund method is the "preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share"); Swigart v. Fifth Third Bank, 2014 WL 3447947 *5 (S.D. Ohio July 11, 2014) (adopting the percentage approach as "the most appropriate method for determining reasonable attorneys' fees" in wage and hour cases). "The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel as to their expected recovery, and encouraging early settlement before substantial fees and expenses have accumulated." Rotuna v. W. Customer Mgmt. Grp., LLC, No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at *20 (N.D. Ohio June 15, 2010) (approving fees at one third of common fund). Furthermore, it permits courts to focus on the benefit conferred upon a class or collective rather than the cumbersome task of reviewing complicated and lengthy billing documents. Rawlings, 9 F.3d at 516 ("[T]he lodestar method has been criticized for being too time-consuming of scarce judicial resources."). Further, there are good reasons to prefer using the percentage of the fund

method. See In re Cardinal Health Inc. Sec. Litigations, 528 F. Supp. 2d 752, 761–62 (S.D. Ohio 2007). In these scenarios, there are many good reasons to prefer using the percentage of the fund method because it encourages efficiency, judicial economy, and aligns the interests of lawyers with the class. In re Cardinal Health Inc. Sec. Litigations, 528 F. Supp. 2d 752, 761–62 (S.D. Ohio 2007).

Plaintiffs' request for attorneys' fees equal to one-third of the common fund is particularly reasonable in this case when compared to the lodestar amount. The lodestar amount of attorneys' fees is calculated by multiplying reasonable hourly rates by the hours the attorneys reasonably worked. See Bailey v. AK Steel Corp., 2008 U.S. Dist. LEXIS 18838, *6 (S.D. Ohio, Feb. 28, 2008). Here, the lodestar amount is approximately $110,000.00 as of the date of this filing, which does not include the additional time Plaintiffs' counsel will spend on this matter.[4] (B. Gibson Dec. ¶24). This Court has determined that the requested attorneys' fees are reasonable in situations, such as here, where lodestar amount is approximately one-third the percentage-of-the-fund amount. See, e.g., Lowther v. AK Steel Corp., 2012 U.S. Dist. LEXIS 181476, *17 (S.D. Ohio, Dec. 21, 2012) (approving a percentage of the fund calculation for attorneys' fees based, in part, on the fact the lodestar multiplier was 3.06 of the percentage of the fund).

### 3. Courts in the Sixth Circuit Regularly Approve that 1/3 of the Common Fund is a Reasonable Attorney Fee Award.

One-third of the settlement fund is a "normal [attorney] fee amount in a wage and hour case." Brandenburg v. Cousin Vinny's Pizza, LLC, No. 3:16-CV-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (Rice, J.) (approving as reasonable 1/3 for attorney's fees from a

---

[4] The reasonable hourly rate of Plaintiffs' counsel, Bradley L. Gibson and Angela J. Gibson, is $350.00. That amount is reasonable given their years of experience practicing wage-and-hour litigation and has been approved by this Court for other attorneys with similar years of experience. (See B. Gibson Dec., ¶11).

common fund of $1,140,000); <u>Arledge v. Domino's Pizza, Inc.</u>, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *4 (S.D. Ohio Oct. 17, 2018) (Rice, J.) (observing collective cases that attorney fee awards "typically range from 20 to 50 percent of the common fund"); <u>Osman</u>, 2018 U.S. Dist. LEXIS 78222, at *6 (citations omitted) ("one-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'"). Indeed, following the common fund approach, this Court recently approved 1/3 of the common fund for the same counsel. See <u>Al-Sabur, et al. v. ADS Alliance Data Systems, Inc.</u>, No. 2:18-cv957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving as reasonable 1/3 of the common fund of $525,000 for attorney fees); <u>Walton, et al. v. Oldcastle BuildingEnvelope, Inc.</u>, No. 3:18- cv-2936, ECF No. 44 (N.D. Ohio Mar. 2, 2020) (Carr, J.) (approving as reasonable 1/3 of a total common fund of $775,000 for attorney fees); <u>see also</u> <u>Swigart</u>, 2014 WL 3447947 *7 ("An award of 33% of the total settlement fund" – before additional payment for expenses – "is well within the range of fees requested in class and collective actions in Ohio federal district courts. [Cit.]; Kritzer, 2012 U.S. Dist. LEXIS 74994, 2012 WL 1945144, at *9-10 (awarding attorney's fees and costs up to $235,000 out of a settlement of $455,000 (52% of total recovery) in a hybrid FLSA collective and Ohio class action for unpaid overtime)."); <u>Bessey v. Packerland Plainwell, Inc.</u> 2007 WL 3173972 (W.D. Mich. 2007) (approving a one-third attorneys' fee award in an FLSA settlement); <u>Rotuna v. W. Customer Mgmt. Grp., LLC</u>, No. 4:09-CV-1608, 2010 U.S. Dist. LEXIS 58912, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving one-third of the common fund as attorneys' fees). Accord Dillworth v. Case Farms Processing, Inc., 5:08CV1694, 2009 U.S. Dist. LEXIS 76947 (N.D. Ohio 2009); <u>Jackson v. Papa John's</u>, Case No. 1:08-CV-2791, 2008 U.S. Dist. LEXIS 107650 (N.D. Ohio 2008); <u>Fincham v. Nestle Prepared Foods Co.</u>, 1:08-CV-73 (N.D. Ohio 2008); <u>McGhee v. Allied Waste Indus.</u>, Case No. 1:07-CV-1110 (N.D. Ohio 2007)); <u>In re</u>

Revco Securities Litigation, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993); Hebert v. Chesapeake Operating, Inc., 2019 WL 4574509, Case No. 2:17-cv-852, *8 (S.D. Ohio Sept. 20, 2019) ("33% is typical for attorney's fees in common fund, FLSA collective actions in this District…").

As a result, the proper measure when analyzing a percentage of the fund award is to take the attorney's fees "as the numerator and the denominator is the total dollar figure of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration)." Rikos, 2018 WL 2009681 at *8, quoting Gascho v. Glob Fitness Holdings, LLC, 822 F.3d 269, 282 (6th Cir. 2016).

In this case, under Gascho, the appropriate measure is: $333,333.33/ $1,000,000 = 33.33% fee award. As noted above, a 33.33% award for attorney fees is well within the range courts in this district (and others) have found to be reasonable. See Rikos, 2018 WL 2009681 at *9. For these reasons, Plaintiffs respectfully request an award of $333,333.33 in attorney's fees and $16,488.83 in expenses incurred in this litigation. Defendant does not oppose this request. Accordingly, Plaintiffs respectfully request that the Court to approve the settlement.

## IV. CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court enter an Order as follows:

1. Preliminarily approving the Settlement as fair, reasonable, and adequate under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23(e);

2. Granting certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of a settlement Class as defined herein;

3. Appointing Bradly L. Gibson and Angela J. Gibson of Gibson Law, LLC, as class counsel pursuant to Fed. R. Civ. P. 23(g);

4. Appointing Analytics, LLC, as the Claims Administrator for purposes of administering the settlement;

5. Approving the form, content, and manner of the Notice to the proposed settlement class; and

6. Setting a final approval hearing on a schedule consistent with the Parties' settlement Agreement and the Court's calendar.

**TAFT STETTINIUS & HOLLISTER, LLP**

By: /s/ Justin D. Flamm (per email authority)
Justin D. Flamm (0071575)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202 - 3957
Telephone: (513) 381-2838
Facsimile: (513) 381-0205
flamm@taftlaw.com

*Attorney for Defendant*

**GIBSON LAW, LLC**

By: /s/ Bradley L. Gibson
Bradley L. Gibson (0085196)
Angela J. Gibson (0080928)
Gibson Law, LLC
9200 Montgomery Road
Suite 11A
Cincinnati, OH 45242
Telephone: (513) 834-8254
Facsimile: (513) 834-8253
brad@gibsonemploymentlaw.com
angela@gibsonemploymentlaw.com

*Attorneys for Plaintiff Ian Crace and all Opt-in Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Bradley L. Gibson, hereby certify that, on this date, I caused the foregoing document to

be filed electronically with this Court, where it is available for viewing and downloading from the

Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic

Filing constituting service of the filed document, upon the following:


Justin D. Flamm
flamm@taftlaw.com

Shawna M. Sorrell
ssorrell@taftlaw.com


/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)