**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **IAN CRACE, et al., for himself and others similarly situated,** | : : | **Case No. 3:20-cv-176** |
| | : | **Judge Michael J. Newman** |
| **Plaintiffs,** | : : | |
| | : | **Magistrate Judge Caroline H. Gentry** |
| v. | : : | |
| **VIKING GROUP, INC.,** | : : | |
| **Defendant.** | : : | |

## THE PARTIES' JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

Named Plaintiff Ian Crace and Defendant Viking Group, Inc. (collectively hereinafter the "Parties"), by and through undersigned counsel, for the reasons set forth in the memorandum of law in support of this motion, hereby move the Court for entry of an order:

1. Granting certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of a settlement class as defined in the accompanying memorandum between May 6, 2017, and January 17, 2023, except for any individuals who elected to opt out of the settlement class;

2. Approving the settlement as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e);

3. Approving the Settlement Agreement and that it be implemented according to its terms and conditions as set forth in the Settlement Agreement;

4. Granting Class Counsel their attorney fees, expenses, and costs; and

5. Dismissing this action on the merits with prejudice.

Respectfully Submitted,

**GIBSON LAW, LLC**

**TAFT STETTINIUS & HOLLISTER LLP**

By: /s/ Bradley L. Gibson
Bradley L. Gibson (0085196)
Angela J. Gibson (0080928)
Gibson Law, LLC
9200 Montgomery Road
Suite 11A
Cincinnati, OH 45242
Telephone: (513) 834-8254
Facsimile: (513) 834-8253
brad@gibsonemploymentlaw.com
angela@gibsonemploymentlaw.com

*Attorneys for Plaintiff Ian Crace and all Opt-in Plaintiffs*

By: /s/ Justin D. Flamm (email authority)
Justin D. Flamm (0071575)
TAFT STETTINIUS & HOLLISTER LLP
301 East Fourth Street, Suite 2800
Cincinnati, OH 45202-4245
Telephone: (513) 381-2838
Facsimile: (513) 381-0205
flamm@taftlaw.com
ssorrell@taftlaw.com

*Attorney for Defendant Viking Group, Inc.*

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

On September 11, 2025, this Court preliminarily approved the proposed Rule 23 and 216(b) settlement in this matter.  (*See* ECF No. 53)  In doing so, the Court: (1) Preliminarily approved and incorporated by reference all definitions set forth in the Class Action Settlement and Release Agreement ("Settlement Agreement") as fair, reasonable, and adequate under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23(e); (2) Granted certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of a settlement class consisting of the Class Members, as defined in the terms and conditions of the Settlement Agreement, who worked for Defendant Viking Group, Inc. as delivery drivers or similar employees in Ohio between May 6, 2017 and January 17, 2023, who worked in-store while receiving tipped hourly rate, and who did not opt out of the Class Action; (3) appointed Bradley L. Gibson and Angela J. Gibson of Gibson Law, LLC as Class Counsel pursuant to Fed. R. Civ. P. 23(g); (4) appointed Ian Crace as Class Representative; (5) appointed Analytics, LLC as Settlement Administrator; and (6) approved the settlement procedure and timeline as set forth in the Court's Preliminary Approval Order, dated September 11, 2025.  (ECF No. 53).

No potential class member(s) opted out of the settlement by requesting exclusion.  No class member(s) objected to the settlement.  Counsel worked with Analytics, LLC, to ensure notice of the settlement was successful.  Through these efforts, the Parties achieved a successful Rule 23 settlement, which provided the 843 participating Class Members individual settlement awards based on the settlement allocation formula described in the Motion for Preliminary Approval and the Settlement Agreement.  Therefore, as more fully explained below, final approval is appropriate.

## II.    RELEVANT PROCEDURAL POSTURE AND FACTUAL BACKGROUND SINCE PRELIMINARY APPROVAL ON SEPTEMBER 11, 2025

Analytics, LLC, has implemented notice plan since the Court granted the Parties' Joint Motion for Preliminary Approval of Class and Collective Action Settlement and Certification of Settlement Class ("Preliminary Approval Motion") on September 11, 2025. (ECF No. 53), Analytics, LLC implemented the notice plan as outlined below.

On or about September 30, 2025, Defendant's counsel provided Plaintiffs' counsel with an updated spreadsheet containing the class member data, including the updated contact information for the 843 class members. (*See* Exhibit A, Declaration of Jeff Mitchell, Project Manager for Analytics, LLC, ¶2).

On October 15, 2025, Analytics sent the Settlement Notices via First-Class United States Mail to the Class Members, consisting of a total of 843 Class Members, pursuant to the settlement procedure and timeline approved by the Court. (*Id.* at ¶3).[1] During the 45-day Notice Period, Analytics received 170 notices that were returned as undeliverable, and it searched for new addresses through skip tracing and re-mailed 88 of the notices to the updated addresses. (*Id.* at ¶4)

Pursuant to the Court-approved notice plan, the Class Members had 45 days from the date of mailing to review the terms of the Notice of Collective and Class Action Lawsuit Settlement and submit a request to be excluded or object. As of the deadline of November 28, 2025, to request exclusion, Analytics received zero (0) request(s). (*Id.* at ¶5). In addition, the deadline to object to the settlement was also on November 28, 2025, and Analytics received zero (0) objection(s). (*Id.* at ¶6)

---

[1] The Court originally directed Analytics to distribute the Notice of Collective and Class Action Lawsuit Settlement within 24 days after the Court granted the Parties' Joint Motion for Preliminary Approval of Class and Collective Action Settlement and Certification of Settlement Class on September 11, 2025. (*See* ECF Doc. #53). On October 14, 2025, the Court issued an order granting the Plaintiff's Unopposed Motion for An Extension of Time to Distribute the Notice of Collective and Class Action Lawsuit Settlement to October 15, 2025. (*See* ECF Doc. #55).

## III. LAW AND ARGUMENT

Insofar as the Settlement Agreement proposes to settle claims brought under the Ohio Minimum Fair Wage Standards Act, O.R.C. 4111.03-4111.08; the Ohio Constitution, Article II, § 34a; and the Ohio Prompt Pay Act, O.R.C. 4113.15 (collectively, "the Ohio Acts"), as agreed to between the Parties, the settlement is subject to approval by the Court under Fed. R. Civ. P. 23(e). Aside from the final approval hearing requirement under Rule 23(e)(2), which is scheduled for December 5, 2025, at 10:00 A.M., the remaining requirements set forth in Rule 23(a)-(f) have been met. For the reasons outlined below, final approval is appropriate.

### A. FINAL APPROVAL OF THE SETTLEMENT UNDER RULE 23(e) IS APPROPRIATE

Before a district court approves a settlement, it must find that the settlement is "fair, reasonable, and adequate." *Johnson v. Midwest Logistics Sys., Ltd.*, 2013 WL 2295880 (S.D. Ohio May 24, 2013) (*citing UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). A district court looks to seven factors in determining whether a class action settlement is fair, reasonable, and adequate:

> (1) the risk of fraud or collusion;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the amount of discovery engaged in by the parties;
> (4) the likelihood of success on the merits;
> (5) the opinions of class counsel and class representatives;
> (6) the reaction of absent class members; and
> (7) the public interest.

*See Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, *3 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (citing *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011)). In reviewing a proposed class action settlement, the district court has "wide discretion in assessing the weight and applicability" of the relevant factors. *Wright*, 2018

5

WL 3966253 at *3 (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992.)). As set forth below, the settlement meets the standard for final settlement approval as to each factor and should be approved by the Court.

### 1. <u>The Absence of Fraud or Collusion Supports Approval.</u>

Courts presume the absence of fraud or collusion unless there is evidence to the contrary. *Wright*, 2018 WL 3966253 at *3 (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992.)). As noted in the Preliminary Approval Motion, the parties reached a settlement after an extensive review and computation of damages by Class Counsel, substantial discovery exchanged between the parties, including thousands of pay and time records, the deposition of Named Plaintiff and Class Representative Ian Crace on February 10, 2022, and a full day of mediation on January 6, 2023, before an experienced mediator, Stephen Calardo. The settlement was negotiated with the assistance of an experienced, neutral third-party mediator, which is a strong indicator of good faith, arm's-length bargaining. As such, there is no indicia of fraud or collusion.

### 2. <u>The Complexity, Expense, and Likely Duration of Continued Litigation Support Approval.</u>

Generally, as this Court observed, most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them. *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019) (Rice, J.); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, *3 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (internal citations omitted); *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 985, 1013 (S.D. Ohio 2001). As previously asserted, the policy favoring the settlement of class actions and other complex cases applies with particular force here. There were many disputes between the parties since the onset of the litigation and there are many more disputes

ahead for the parties. The disputed issues included, but were not limited to, whether the Class Members are entitled to normal minimum wage for certain in-store work performed while receiving the tipped hourly rate, the calculation of overtime hours and damages, and whether Defendant acted in good faith (which affects the availability of liquidated damages). Absent settlement, the Parties would have engaged in significant additional discovery, including depositions of many, if not all, of the Class Members, expert testimony, class certification briefing (or decertification motions), dispositive motions on the merits and damages issues, trial, and potential appeals. Accordingly, the litigation was difficult and complex and weighs in favor of the settlement. As such, these factors favor approval. *Wright*, 2018 WL 3966253 at *3-4. *See also Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, 2019 WL 696941, at *3-4 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), report and recommendation adopted, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.).

### 3. **The Amount of Discovery Engaged in by the Parties Supports Approval because they Sufficiently Investigated the Claims and Defenses Asserted.**

To confirm that the Plaintiff "had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. *Wright*, 2018 WL 3966253 at *4 (*quoting In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006) (Watson, J.)). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Wright*, 2018 WL 3966253 at *4 (internal citations omitted). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id*; *Mitchell*, 2019 WL

696941, at *4 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), report and recommendation adopted, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.); *See Dillow v. Home Care Network, Inc.*, 2018 WL 4776977, at *3 (S.D. Ohio Oct. 3, 2018) (stating that while the parties had not reached conducting depositions, that "in a wage and hour case based primarily on payroll records, this is sufficient for the parties to properly evaluate their risks and fairly settle the claims").

In this case, the Parties engaged in substantial investigation prior to commencing and throughout the litigation, including when negotiating a potential resolution. The Parties exchanged written discovery and relevant information. Defendant produced thousands of pay and time records for the Named Plaintiff, Opt-In Plaintiffs, and other putative class members. The Parties initially agreed to have a randomized sample of 33 Opt-In Plaintiffs respond to Defendant's written discovery requests, with the randomized sample including an opt-in plaintiff from each of Defendant's restaurant locations. Class Counsel spent significant time conferring with the opt-in plaintiffs within that randomized sample to receive the requested responsive information to Defendant. Additionally, Defendant deposed Named Plaintiff Ian Crace. Moreover, Class Counsel engaged in further independent investigation of the facts, reviewed pay data, spoke to witnesses and putative class members, performed damages calculations, and conducted additional legal research regarding the claims and defenses in the lawsuits. The documents Defendant produced provided Class Counsel with significant information, including but not limited to, showing when the delivery drivers were in the restaurant and the minimum wage amount Defendant paid the delivery drivers during the time they were in the store. Plaintiffs' Class Counsel was able to use those records, along with their meetings with the sample Opt-In Plaintiffs, to calculate a demand on behalf of the class of delivery drivers. Thus, the legal issues were thoroughly researched by the Parties and the value of the claims properly assessed. As a result, this factor favors final approval.

*Wright*, 2018 WL 3966253 at *4; *see Mitchell*, 2019 WL 696941, at *4 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), report and recommendation adopted, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.).

4. **The Likelihood of Success on the Merits, as well as the Risks of Litigation and Uncertainty of Recovery, Favor Approval because there Exists a Bona Fide Dispute over Success on the Merits.**

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Wright*, 2018 WL 3966253 at *4 (quoting *Poplar Creek*, 636 F.3d at 245 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984))). *See Mitchell*, 2019 WL 696941, at *4 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), report and recommendation adopted, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.).

In this case, Counsel for both sides believe in the merits of their clients' respective positions and have vigorously represented their clients' interests throughout the Litigation, but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result. For example, the settlement provides relief to the settlement class members and eliminates the risks that the Parties would otherwise bear if the litigation were to continue on for years, which favors this factor. *See Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *3 (N.D. Ohio Mar. 26, 2019) (citing *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640 (6th Cir. 2013) (affirming bench trial verdict that special investigators were properly classified as exempt from the overtime pay requirements of the FLSA); *Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012) (affirming a jury verdict, reached after eight years of litigation, that mortgage bankers were properly classified as exempt from the overtime pay requirements of the FLSA).

The disputed issues include, but are not limited to, whether the Class Members are entitled to normal minimum wage for certain in-store work performed while receiving the tipped hourly rate, the calculation of damages for unpaid minimum wages, and whether Defendant acted in good faith (which affects the availability of liquidated damages).

Absent settlement, the Parties would have engaged in significant discovery, including, but not limited to responses to discovery requests of many, if not all of the Opt-In Plaintiffs, many depositions, discovery-related motion practice, further testimony at any additional hearings, and other motion practice (Rule 23 class certification, FLSA collective decertification, dispositive motions on the merits and damages issues). Further, even if they prevail on the merits, any recovery could be significantly curtailed if a jury concludes that Defendant acted in good faith and Representative Plaintiff fails to establish a willful violation of the law. Moreover, an appeal could be filed.

On the other hand, Defendant faces the prospect of class-wide liability to approximately 843 current and former employees, as well as liquidated damages and attorney's fees following lengthy and expensive litigation. These considerations all support approval of the settlement. Indeed, by agreeing to the settlement, these risks are eliminated, and participating class members are guaranteed to receive an excellent recovery now, rather than possibly receiving a recovery years from now (or not receiving any recovery ever). *Barnes*, 2019 WL 1614822, at *3; *see also Hall v. U.S. Cargo and Courier Service, LLC*, 2019 WL 6001198 at *4 (S.D. Ohio Nov. 14, 2019) (Sargus, J) (denying defendant's request for costs following a jury trial in a FLSA collective action). As a result, these considerations all support final approval of the settlement. *Wright*, 2018 WL 3966253 at *4-5.

**5.  The Opinions of Class Counsel and Representative Plaintiff Favor Approval**

The recommendation of Class Counsel, skilled in class actions and wage-and-hour matters, that the Court should approve the Settlement is entitled to deference. *Wright*, 2018 WL 3966253 at *4-5; *Mitchell*, 2019 WL 696941, at *5 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.). *See, e.g., Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."). *See also Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, *7 (S.D. Ohio May 30, 2012) 2012 WL 1945144, at *7 ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

In this case, the Parties' counsel are experienced in wage-and-hour class and collective actions, have acted in good faith, and have represented their clients' best interests in reaching this Settlement. Bradley L. Gibson and Angela J. Gibson of Gibson Law, LLC, possess extensive experience in wage-and-hour class and collective actions. And, for the reasons set forth above as well as in their declarations already submitted before the Court, Class Counsel is of the opinion that the Settlement is a fair, reasonable, and adequate resolution of this Litigation. Likewise, Representative Plaintiff Ian Crace agrees that the settlement is fair and reasonable, and he assents to the terms of the Settlement. As such, these factors favor final approval. *See Wright*, 2018 WL 3966253 at *5; *Kritzer*, 2012 WL 1945144 at *8 (citing *In re Telectronics Pacing Systems, Inc.*, 137 F.Supp.2d 985, at 1013 (S.D. Ohio 2001)).

11

### 6.   **The Reaction of Class Members Favor Approval**

The Court must also consider the reaction of the absent class members. *Wright*, 2018 WL 3966253 at *5 (internal citations omitted). As indicated above, zero (0) potential Class Member(s) requested exclusion from the settlement, and zero (0) Class Member(s) objected to the settlement. (Ex. A, ¶¶4 – 5).  As such, no further analysis is needed because this fact favors final approval. *Wright*, 2018 WL 3966253 at *5; *Mitchell*, 2019 WL 696941, at *5 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.). *See also Kritzer*, 2012 WL 1945144 at *7.

### 7.   **The Public Interest Favors Approval**

As previously observed by this Court, the public interest favors the settlement of class action litigation. *Wright*, 2018 WL 3966253 at *5; *Mitchell*, 2019 WL 696941, at *5-6 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.); *Kritzer*, 2012 WL 1945144 at *8; *Hainey v. Parrott*, 617 F.Supp.2d 668, 679 (S.D. Ohio 2007). *See also Edwards v. City of Mansfield*, 2016 U.S. Dist. LEXIS 64159, *10 (N.D. Ohio May 16, 2016); and *Williams v. K&K Assisted Living LLC*, 2016 U.S. Dist. LEXIS 9310, *3 (E.D. Mich. Jan. 27, 2016) (district courts may approve FLSA settlements "in order to promote the policy of encouraging settlement of litigation"), quoting, *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1992). As one district court in this Circuit explained, "the certainty and finality that comes with settlement also weighs in favor of approving a fair and reasonable settlement." *Edwards*, 2016 U.S. Dist. LEXIS 64159 at *10. The proposed settlement ends potentially long and protracted litigation, which serves the public

interest. *Wright*, 2018 WL 3966253 at *5; *Kritzer*, 2012 WL 1945144 at *8; and *In re Broadwing*, 252 F.R.D. 369, 376 (S.D. Ohio 2006).

The same is true here. The settlement promotes public interest by providing fair and efficient payments to Collective and Class Members, avoiding the continued expenditure of judicial resources on protracted complex litigation, and eliminating the risks that both parties face through the litigation process. As such, this factor favors final approval.

## B. THE SETTLEMENT DISTRIBUTIONS ARE FAIR, REASONABLE, AND ADEQUATE.

In evaluating the fairness of a class settlement, a court should also ensure that the distribution of settlement proceeds is equitable. *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144 at *8 (S.D. Ohio May 30, 2012) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). Equity does not dictate that the proceeds must be shared on a pro-rata basis, so long as the ultimate distribution is fair, reasonable, and adequate. *Id.* (internal citations omitted.).

In the present case, as outlined in the Parties' Preliminary Approval Motion, this settlement establishes a pool of Settlement funds that will be divided among the Settlement Class members who do not opt out of the settlement on a pro rata basis based upon their calculated damages (hours worked and length of employment). This ensures an equitable distribution of settlement proceeds that is directly tied to the claims of and harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds.

### 1. The Individual Payments are Reasonable and Adequate.

With respect to the settlement payments to the Settlement Class members, the individual payments are reasonable. The total Settlement Fund of $1,000,000.00 will provide approximately $640,177.84 to individual Class Member payments. The total Settlement Fund represents more

13

than 100% of the maximum unliquidated minimum wage damages calculated by Class Counsel. Defendant disputes the maximum alleged minimum wage damages calculated by Class Counsel and instead believes that the total settlement fund exceeds the maximum recoverable damages in Litigation. Although 102 of the settlement payments will be at the agreed upon minimum amount of $20.00, the remaining settlement payments exceed this amount with the highest payment in excess of $5,700. The Settlement Fund and individual settlement payments represent a reasonable and adequate resolution of the settlement class members' minimum wage claims.

### 2. Representative Plaintiff's Service Award is Reasonable

The Sixth Circuit declared that "numerous courts have authorized incentive awards [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); *accord Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *4-5 (N.D. Ohio May 4, 2018); *Wright*, 2018 WL 3966253 at *7. Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Wright*, 2018 WL 3966253 at *7 (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted)). Service awards to representative plaintiffs "are common in class action settlement and routinely approved for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 WL 1945144 at *8. As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990):

In the present case, Representative Plaintiff Ian Crace's role in the Litigation was crucial and the requested payment amount is reflective of his contributions. Representative Plaintiff assisted in the Litigation by: (1) providing extensive factual information to Plaintiffs' counsel; (2) faithfully communicating with Plaintiffs' counsel throughout the case; (3) subjecting himself to the responsibilities and potential liability of serving as Representative Plaintiff; (4) responding to written discovery requests; (5) being deposed by Defendant's counsel; (6) attending the full-day mediation on January 6, 2023; (7) providing sworn statements; and (8) otherwise providing material information to Plaintiffs' counsel above and beyond the normal course. Representative Plaintiff also attached his name to a publicly filed lawsuit against an employer in his community, which justifies his service award. *Osman*, 2018 U.S. Dist. LEXIS 78222, at *5 (citing *Sand v. Greenberg*, 2011 U.S. Dist. LEXIS 155013, 2011 WL 784602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting")). For his individual efforts, Representative Plaintiff is requesting a service payment of $10,000.00.

Moreover, the proposed service payment is within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *See Al-Sabur, et al. v. ADS Alliance Data Systems, Inc.*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an Opt-In Plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) ($10,000 service award for each named plaintiff); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *8 (S.D. Ohio Nov. 25, 2019) (Rice, J.) ($10,000 service award for each named plaintiff); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) (Rice, J.) ($10,000 service award for each named

plaintiff); *Swigart v. Fifth Third Bank*, 2014 WL 3447947 *7 (S.D. Ohio July 11, 2014) (approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 hybrid action).

As more fully discussed above and in the Parties' Preliminary Approval Motion, the incentive award to Ian Crace is appropriate in light of his service in the Litigation.

## C. PLAINTIFFS' ATTORNEY FEES AND REIMBURSEMENT OF COSTS ARE REASONABLE AND APPROPRIATE FOR FINAL APPROVAL

### 1. The Mandatory Provisions of Attorney Fees and Costs under the Ohio Wage Act.

The Ohio Wage Act also provides for the recovery of attorney fees and costs. Specifically, the Ohio Wage Act, R.C. § 4111.10(A) states that "Any employer who pays any employee less than wages to which the employee is entitled under section 4111.03" allows for the recovery of "costs and reasonable attorney's fees as may be allowed by the court." The federal courts have long recognized the profound importance of plaintiffs' right to recover attorney's fees for wage-and-hour claims. In *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, Local 307, et al. v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 501 (6th Cir. 1984), the Court recognized that an award of attorney's fees is mandatory under 29 U.S.C. §216(b). The Court explained, that "the purpose of §216(b) is to insure effective access to the judicial process by providing attorneys for prevailing plaintiffs with wage and hour grievances; [o]bviously Congress intended that the wronged employee should receive his full wages ... without incurring any expense for legal fees or costs." *Id*. (quoting *Maddrix v. Dize*, 153 F.2d 274, 275-76 (4th Cir. 1946)). Plaintiffs "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting S. Rep. No. 94-1011, at 4 (1976), 1976 U.S.C.C.A.N. at 5912).

As this Court declared, "when awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253 at *6 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, 2019 WL 696941, at *6 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), report and recommendation adopted, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.). *See also Connectivity Sys. Inc. v. Nat'l City Bank*, Case No. 2:08-cv-1119, 2011 WL 292008, at *13, 2011 U.S. Dist. LEXIS 7829, at *34 (S.D. Ohio Jan. 26, 2011) (citation omitted) (Watson, J.) ("absent adequate compensation, counsel will not be willing to undertake the risk of common fund class action litigation. Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved.") (internal citations omitted). Rule 23 authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." See Fed. R. Civ. P. 23(h). Plaintiffs' successful pursuit of this action can also support award of reasonable attorney's fees. *Wright*, 2018 WL 3966253 at *6 (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194 (6th Cir. 1974).

District courts apply a two-part analysis to assess the reasonableness of an attorney fee petition. *Wright*, 2018 WL 3966253 at *6 (citing *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d 752, 760 (S.D. Ohio Dec. 31, 2007)). First, the Court must determine the appropriate method to calculate the fees, using either the percentage of fund or the lodestar approach. *Id.* Whichever method is utilized, the United States Court of Appeals for the Sixth Circuit requires "only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Id.* (citing *Rawlings*, 9 F.3d at 516). Second, the Court must consider six

factors to assess the reasonableness of the fee. *Id.* (citing *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)).

In this case, Plaintiffs respectfully request that the Court apply the percentage of the fund method to cover Plaintiffs' attorney fees and reimbursement of costs for several reasons that follow.

   2. **The Court should use the "Percentage of the Fund" approach to calculate a reasonable fee because it is the preferred method in the Southern District of Ohio.**

The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing C. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement. *Rawlings v. Prudential Bache Prop., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *see also Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766, 790 (N.D. Ohio 2010) (the percentage-of-the-fund method is the "preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share"); *Swigart v. Fifth Third Bank*, 2014 WL 3447947 *5 (S.D. Ohio July 11, 2014) (adopting the percentage approach as "the most appropriate method for determining reasonable attorneys' fees" in wage and hour cases). "The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel as to their expected recovery, and encouraging early settlement before substantial fees and expenses have accumulated." *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at *20 (N.D. Ohio June 15, 2010) (approving fees at one third of common fund). Furthermore, it permits courts to focus on the benefit conferred upon a class or collective rather than the cumbersome task of reviewing complicated and lengthy billing documents. *Rawlings*, 9

F.3d at 516 ("[T]he lodestar method has been criticized for being too time-consuming of scarce judicial resources."). Further, there are good reasons to prefer using the percentage of the fund method. *See In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d 752, 761-62 (S.D. Ohio 2007) (providing an excellent discussion on the subject). In these scenarios, as previously observed, there are several good reasons to prefer using the percentage of the fund method. *See In re Cardinal Health*, 528 F.Supp.2d 752, 761-62 (S.D. Ohio 2007). For example, the percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class. *Id.* In contrast to the lodestar approach which incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead "rewards counsel for success and penalizes it for failure." *Id.* (internal citations omitted.) The lodestar method also burdens courts "with the tedious task of auditing time records," and is still subject to arbitrariness. *Id.*

In order to determine the amount of the "fund" for purposes of gauging a fee award, "courts include all amounts benefitting the class, including those amounts typically born by the class, such as attorneys' fees and notice and administration costs." *Rikos v. Proctor & Gamble Company*, No. 1:11-cv-226, 2018 WL 2009681 at *8 (S.D. Ohio Apr. 30, 2018). That said, the proper measure when analyzing a percentage of the fund award is to take the attorney's fees "as the numerator and the denominator is the total dollar figure of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration)." *Rikos*, 2018 WL 2009681 at *8, quoting *Gascho v. Glob Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016). As outlined in Plaintiffs' Preliminary Approval Motion, Plaintiffs respectfully request an award of one third of this total amount, or $333,333.33, for their attorneys' fees. Under *Gascho*, the correct measure is:

19

$333,333.33 / \$1,000,000 = 33.3\%$ fee award

Federal jurisprudence within the Sixth Circuit, including this Court, hold that 1/3 of the settlement fund is a "normal fee amount in a wage and hour case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (Rice, J.) (approving as reasonable 1/3 for attorney's fees from a common fund of \$1,140,000); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *4 (S.D. Ohio Oct. 17, 2018) (Rice, J.) (observing collective cases that attorney fee awards "typically range from 20 to 50 percent of the common fund"); *Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *6 (N.D. Ohio May 4, 2018) (citations omitted) ("one-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'"). Indeed, following the common fund approach, this Court recently approved 1/3 of the common fund for the same counsel. *See Al-Sabur, et al. v. ADS Alliance Data Systems, Inc.*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving as reasonable 1/3 of the common fund of \$525,000 for attorney fees); *Walton, et al. v. Oldcastle BuildingEnvelope, Inc.*, No. 3:18-cv-2936, ECF No. 44 (N.D. Ohio Mar. 2, 2020) (Carr, J.) (approving as reasonable 1/3 of a total common fund of \$775,000 for attorney fees); *see also Swigart*, 2014 WL 3447947 *7 ("An award of 33% of the total settlement fund" - before additional payment for expenses - "is well within the range of fees requested in class and collective actions in Ohio federal district courts. *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, 2012 WL 1945144, at *9-10 (S.D. Ohio May 30, 2012) (awarding attorney's fees and costs up to \$235,000 out of a settlement of \$455,000 (52% of total recovery) in a hybrid FLSA collective and Ohio class action for unpaid overtime)."); *Bessey v. Packerland Plainwell, Inc.* 2007 WL 3173972 (W.D. Mich. 2007) (approving a one-third attorneys' fee award in an FLSA

settlement); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09-CV-1608, 2010 U.S. Dist. LEXIS 58912, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving one-third of the common fund as attorneys' fees). *Accord Dillworth v. Case Farms Processing, Inc.*, 5:08CV1694, 2009 U.S. Dist. LEXIS 76947 (N.D. Ohio 2009); *Jackson v. Papa John's*, Case No. 1:08-CV-2791, 2008 U.S. Dist. LEXIS 107650 (N.D. Ohio 2008); *Fincham v. Nestle Prepared Foods Co.*, 1:08-CV-73 (N.D. Ohio 2008); *McGhee v. Allied Waste Indus.*, Case No. 1:07-CV-1110 (N.D. Ohio 2007)); *In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993); *Hebert v. Chesapeake Operating, Inc.*, 2019 WL 4574509, Case No. 2:17-cv-852, *8 (S.D. Ohio Sept. 20, 2019) ("33% is typical for attorney's fees in common fund, FLSA collective actions in this District ... ").

In this case, the parties agreed through the Settlement Agreement that out of the total Settlement Fund of $1,000,000.00, the settlement agreement provides that it shall pay (a) all of the Individual Payments to Class Members; (b) Class Representative's Service Award; and (c) Class Counsel's attorneys' fees and expenses. As outlined in Plaintiffs' Preliminary Approval Motion and in the Settlement Agreement, Plaintiffs are requesting 1/3 of the common fund, or $333,333.33 in attorney's fees, and $16,488.83 in costs/expenses for a total Class Counsel Award of $349,822.16. Under *Gascho*, the correct measure is: $333,333.33 / $1,000,000 = 33.3% fee award. As noted above, a 33.3% award for attorney fees is well within the range courts in this district (and others) have found to be reasonable. *See Rikos*, 2018 WL 2009681 at *9.

Plaintiffs' request for attorneys' fees equal to one-third of the common fund is particularly reasonable in this case when compared to the lodestar amount. The lodestar amount of attorneys' fees is calculated by multiplying reasonable hourly rates by the hours the attorneys reasonably worked. Here, the lodestar amount is approximately $126,500.00 as of the date of this filing, which

does not include the additional time Plaintiffs' counsel will spend on this matter. This Court has determined that the reasonable attorneys' fees amount for Plaintiffs' counsel, Bradley L. Gibson and Angela J. Gibson, is $350.00. That amount is reasonable given their years of experience practicing wage-and-hour litigation and has been approved by this Court for other attorneys with similar years of experience. This Court has determined that the requested attorneys' fees are reasonable in situations, such as here, where the lodestar amount is approximately one-third the percentage-of-the-fund amount, resulting in a lodestar multiplier of approximately 3.0. *See, e.g., Lowther v. AK Steel Corp.*, 2012 U.S. Dist. LEXIS 181476, *17 (S.D. Ohio, Dec. 21, 2012) (approving a percentage of the fund calculation for attorneys' fees based, in part, on the fact the lodestar multiplier was 3.06 of the percentage of the fund). This lodestar amount does not include future time counsel will spend on final approval and implementation of the settlement.

For these reasons, Plaintiffs respectfully request an award of $333,333.33 in attorney's fees and $16,488.83 in expenses incurred in this litigation. Defendant does not oppose this request. Consequently, for the reasons set forth herein as well as those enumerated in Plaintiffs' Preliminary Approval Motion, Plaintiffs respectfully request that this Court grant Class Counsel the requested attorney's fees and costs/expenses.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the Parties respectfully request that the Court enter an Order as follows:

1. Granting certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of a settlement class as defined in the accompanying memorandum between May 6, 2017 and January 17, 2023, except for any individuals who elected to opt out of the settlement class;

2. Approving the settlement as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e);

22

3. Approving the Settlement Agreement and that it be implemented according to its terms and conditions as set forth in the Settlement Agreement;

4. Granting Class Counsel their requested attorney fees in the amount of $333,333.33 and expenses in the amount of $16,488.83;

5. Granting the service award to Class Representative Ian Crace in the amount of $10,000.00; and

6. Dismissing this action on the merits with prejudice.

Respectfully Submitted,

**GIBSON LAW, LLC**

**TAFT STETTINIUS & HOLLISTER LLP**

By: /s/ Bradley L. Gibson
Bradley L. Gibson (0085196)
Angela J. Gibson (0080928)
Gibson Law, LLC
9200 Montgomery Road
Suite 11A
Cincinnati, OH 45242
Telephone: (513) 834-8254
Facsimile: (513) 834-8253
brad@gibsonemploymentlaw.com
angela@gibsonemploymentlaw.com

*Attorneys for Plaintiff Ian Crace and all*
*Opt-in Plaintiffs*

By: /s/ Justin D. Flamm (email authority)
Justin D. Flamm (0071575)
TAFT STETTINIUS & HOLLISTER LLP
301 East Fourth Street, Suite 2800
Cincinnati, OH 45202-4245
Telephone: (513) 381-2838
Facsimile: (513) 381-0205
flamm@taftlaw.com
ssorrell@taftlaw.com

*Attorneys for Defendant Viking Group, Inc.*

23

**<u>CERTIFICATE OF SERVICE</u>**

I, Bradley L. Gibson, hereby certify that, on this date, I caused the foregoing document to be

filed electronically with this Court, where it is available for viewing and downloading from the

Court's ECF system, and that such electronic filing automatically generates a Notice of

Electronic Filing constituting service of the filed document, upon the following:


Justin D. Flamm
flamm@taftlaw.com


/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)
